**FILED**

AUG 2 8 2006

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
　　　　　　　　DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

THOMAS RETZLAFF, §
§
Plaintiff, §
§
v. §　　CIVIL ACTION NO. _____
§
BRENT WILSON, CHOICEPOINT §　　**SA06CA0738 XR**
SERVICES, INC., ROBERTH FAITH, §
STACEY HUNT, JOHN and/or JANE §
DOE, and GREYSTAR REAL ESTATE §
PARTNERS, LLC, §
§
Defendants.

*ORIGINAL*

## NOTICE OF REMOVAL

Please take notice that, pursuant to 28 U.S.C. §§ 1441, 1446 and 1331, Defendants Brent Wilson ("Wilson"), ChoicePoint Services, Inc. ("ChoicePoint") (collectively "Defendants") hereby remove this action from the 37th District Court of Bexar County, Texas to the United States District Court for the Western District of Texas.

### I.　　State Court Action

1.　The removed case is a civil action filed on or about July 25, 2006 in the 37th District Court of Bexar County, Texas, styled *Thomas Retzlaff, Plaintiff v. Brent Wilson, ChoicePoint Services, Inc., Robert Faith, Stacey Hunt, John and/or Jane Doe, and Greystar Real Estate Partners, LLC, Defendants*. The case received Docket Number 2006-C111-334 ("State Court Action"). This removal is being accomplished within thirty (30) days of Defendants first receiving notice of this action by service of the Citation and Original Petition. Thus, this removal is timely.

## II.      Removal Requirements

2.   Pursuant to 28 U.S.C. § 1441(a), venue of the removed action is proper in this Court because the State Court Action is pending in Bexar County, Texas, and this Court is in the district and division encompassing Bexar, County, Texas.

3.   Defendants attach all of the materials required by 28 U.S.C. § 1446(a).  True and correct copies of all process, pleadings, and orders in the State Court Action are attached hereto as **Exhibit A.**

4.   Pursuant to 28 U.S.C. § 1446(d), a Notice of Filing Notice of Removal to Federal Court is being filed with the 37th District Court of Bexar County.  A true and correct copy of this Notice is attached **Exhibit B.**

5.   The undersigned counsel represents Wilson and ChoicePoint.  Each Defendant that has received service of process consents to removal.  *See* **Exhibit C.**

## III.     This Court Has Federal Question Jurisdiction Over the State Court Action

6.   A case may be removed to federal court if it could have been brought in federal court originally.  28 U.S.C. § 1441.

7.   This removed action falls within this Court's original jurisdiction under 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States, specifically the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1861 *et seq.*  Plaintiff's Original Petition asserts that Defendants are liable to Plaintiff because Defendants either willfully or negligently "failed to comply with the Fair Credit Reporting Act including, but not limited to [sections 1681c(a)(2), 1681e, 1681e(b), 1681i, 1681k]." *See* Original Petition at ¶¶ 24-25.   Actions brought in state court asserting claims under FCRA may be removed to federal court.  *See Lockard v. Equifax,*

162 F.3d 1259, 1264 (11th Cir. 1998); *Washington v. Direct General Ins. Agency*, 130 F. Supp.2d 820, 824 (N.D. Miss. 2000).

### IV.    This Court Has Supplemental Jurisdiction

8.   This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  It is well established that federal district courts have supplemental jurisdiction over state law claims that share a "common nucleus of operative facts" with a federal claim. *Jamal v. Travelers Lloyds of Texas Ins. Co.*, 97 F. Supp. 2d 800, 805-806 (S.D. Tex. 2000) (quoting *City of Chicago v. International College of Surgeons*, 522 U.S. 165, 1645-65 (1997)). This principle applies both to cases originally brought in federal court and those removed.  *Id.* at 806.

9.   Plaintiff's state law claims for breach contract, tortious interference with existing contract, defamation, negligence, and malice share a common nucleus of operative facts with the Plaintiffs' federal claims.  Similar factual allegations underlie these claims.  *See* Original Petition at ¶¶ 20-30.  Under these circumstances, the state law claims may be removed to this Court as well.  *See Jamal*, 97 F. Supp. 2d at 806; *Stephens v. LJ Partners*, 852 F. Supp. 597, 600 (W.D. Tex. 1994).

WHEREFORE, Defendants hereby remove this action from the 37th Judicial District Court, Bexar County, Texas to the United States District Court for the Western District of Texas, so that this Court can assume full jurisdiction as provided by law.

Dated: August 25, 2006

Respectfully submitted,

Robert T. Mowrey
State Bar No. 14607500
C. Don Clayton
State Bar No. 24027932

LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue
Suite 2200
Dallas, TX 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Telecopy)

**ATTORNEYS FOR DEFENDANTS BRENT WILSON AND CHOICEPOINT SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Removal was served on this the 25th day of August, 2006 on the following counsel of record, via certified mail, return receipt requested:

Thomas C. Retzlaff
P. O. Box 92
San Antonio, TX 78291-0092
(210) 317-9800 (Telephone)
(210) 877-6034 (Telecopy)
Attorney for Plaintiff

David Fritsche
921 Proton
San Antonio, Texas 78258
(210) 227-2726 (Telephone)
(210) 227-5500 (Telecopy)
Attorney for Greystar Real Estate, Inc.

#A

Case 5:06-cv-00888-XR  Document 1  Filed 08/28/06  Page 6 of 31

## * D O C K E T  I N F O R M A T I O N *

CAUSE NUM: 2006CI11334
DATE FILED: 07/25/2006        COURT: 037          UNPAID BALANCE:        0.00
TYPE OF DOCKET: LEASE

### * * * S T Y L E * * *

THOMAS RETZLAFF
VS BRENT WILSON ET AL

ACCOUNT TYPE:                    ACCOUNT NO:
ACCESS: 0                        STATUS: PENDING
LIST TYPE: C

### * L I T I G A N T  I N F O R M A T I O N *

| SEQ | LAST /FIRST /MIDDLE NAME | LIT. TYPE/ATTORNEY | DATE |
|---|---|---|---|
| 00001 | RETZLAFF THOMAS | PROPIA PERSONA | 07/25/2006 |
| | | 00001 ATTORNEY NAME NOT FOUND | |
| 00002 | WILSON BRENT | DEFENDANT | 07/25/2006 |
| | | 00002 MOWREY, ROBERT T | |
| 00003 | CHOICEPOINT SERVICES INC | DEFENDANT | 07/25/2006 |
| 00004 | FAITH ROBERT | DEFENDANT | 07/25/2006 |
| 00005 | HUNT STACEY | DEFENDANT | 07/25/2006 |
| 00006 | GREYSTAR REAL ESTATE PARTNERS LLC | DEFENDANT | 07/25/2006 |
| 00007 | DOE JOHN | DEFENDANT | 07/25/2006 |
| 00008 | DOE JANE | DEFENDANT | 07/25/2006 |

### * S E R V I C E S  I N F O R M A T I O N *

| SEQ | SERVICE TYPE / DATES | DIST | LITIGANT NAME |
|---|---|---|---|
| 00001 | CITATION CERTIFIED MAIL | 150 | WILSON BRENT |
| | ISS: 07/26/2006  REC: 07/26/2006  EXE: 07/28/2006  RET: 07/31/2006 | | |
| 00002 | CITATION CERTIFIED MAIL | 150 | |
| | ISS: 07/31/2006  REC: 07/31/2006  EXE: 08/03/2006  RET: 08/07/2006 | | |

### * A T T O R N E Y  I N F O R M A T I O N *

| SEQ | DATE FILED | BAR NBR. | NAME | STATUS | DATE |
|---|---|---|---|---|---|
| 00002 | 08/18/2006 | 14607500 | MOWREY, ROBERT T | SELECTED | 08/21/2006 |

### * P R O C E E D I N G  I N F O R M A T I O N *

| SEQ | DATE FILED | REEL | IMAGE | PAGE COUNT |
|---|---|---|---|---|
| 00001 | 07/25/2006 | 0000 | 0000 | 0000 |
| | DESC: PLAINTIFF'S ORIGINAL PETITION | | | |
| 00002 | 07/25/2006 | 0000 | 0000 | 0000 |
| | DESC: REQUEST FOR CIT/CML | | | |

Case 5:06-cv-00688-XR  Document 1  Filed 08/28/06  Page 7 of 31

---

```
00003      07/25/2006           0000      0000         0000
           DESC: SERVICE ASSIGNED TO CLERK 2
00004      08/18/2006           0000      0000         0000
           DESC: ORIGINAL ANSWER OF
                 BRENT WILSON
00005      08/18/2006           0000      0000         0000
           DESC: LETTER TO DISTRICT CLERK
                 FROM DON CLAYTON RE: DOC TO BE FILED
```

### * T R I A L   I N F O R M A T I O N *

| SEQ | DATE FILED | COURT | SETT. DATE | TIME | ATTY |
|-----|-----------|-------|-----------|------|------|

### * O R D E R   I N F O R M A T I O N *

| SEQ | DATE FILED | JUDGE NAME | VOLUME | PAGE | PAGE CNT | AMOUNT | SOF |
|-----|-----------|------------|--------|------|----------|--------|-----|

### * B O N D   I N F O R M A T I O N *

| SEQ | DATE FILED | PRINCIPAL |
|-----|-----------|-----------|

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
MARGARET G. MONTEMAYOR, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THIS FOREGOING IS A
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORD FILED ON  7-25-06
WITNESS MY OFFICIAL HAND AND SEAL OF OFFICE THIS

AUG 2 2 2006

MARGARET G. MONTEMAYOR
BEXAR COUNTY, TEXAS

By: _____ DEPUTY





### MARGARET G. MONTEMAYOR
### BEXAR COUNTY DISTRICT CLERK

**REQUEST FOR PROCESS**

Cause No. **2006CI11334**

Style:

_Thomas Retzloff_

vs.

_Brent Wilson, et al_

Court **37th**

Date _25 July 2006_

Request the following process:

Citation _✓_ Notice _____ Precept _____ Temp. Rest. Order _____
Subpoena _____ Subpoena D.T. _____ **(Describe Duces Tecum on Reverse)**
Temp. Protective Order _____ Other _____
Information for Subpoena: Date_____ Time_____ Court_____

Parties to be served (PLEASE TYPE OR PRINT)

1. _Brent Wilson % Choicepoint Services, Inc._
Address _12770 Coit Rd., Ste. 100_
_Dallas, TX 75251_ Type* _Certified Mail_

2. _____
Address _____
_____ Type* _____

3. _____
Address _____
_____ Type* _____

4. _____
Address _____
_____ Type* _____

5. _____
Address _____
_____ Type* _____

*Type: Sheriff; Constable Pct.____; Private Process; Certified Mail; Registered Mail; Out of
County; Out of State; Secretary of State; Commissioner of Insurance;

Title of Document/Pleading to be attached to process _____

Name and Address of Attorney: _Thomas C. Retzloff, Esq._
_PO Box 92_
_San Antonio, TX 78291-0092_

Attorney's Bar No. _____
Attorney for Plaintiff _✓_ Defendant _____ Other _____

**Name of witness:** _____

**The above witness is requested to bring the following books, papers, documents or tangible things as follows:**

_____

**Name of witness:** _____
**The above witness is requested to bring the following books, papers, documents or tangible things as follows:**

_____

**Name of witness:** _____
**The above witness is requested to bring the following books, papers, documents or tangible things as follows:**

_____

**Name of witness:** _____
**The above witness is requested to bring the following books, papers, documents or tangible things as follows:**

_____

**Name of witness:** _____
**The above witness is requested to bring the following books, papers, documents or tangible things as follows:**

06 JUL 25  PM 12:48

FILED
DISTRICT CLERK
BEXAR CO. TEXAS



#6300
-cit./cml
7-28-06





3

# MARGARET G. MONTEMAYOR
# BEXAR COUNTY DISTRICT CLERK

**REQUEST FOR PROCESS**

Cause No. _2006-CI-111334_

Style:
_Retzloff_

Court _37th DC_

vs.
_Wilson, et al._

Date _28 Jul 06_

**Request the following process:**

Citation _✓_ Notice _____ Precept _____ Temp. Rest. Order _____
Subpoena _____ Subpoena D.T. _____ (Describe Duces Tecum on Reverse)
Temp. Protective Order _____ Other _____
Information for Subpoena: Date_____ Time_____ Court_____

**Parties to be served (PLEASE TYPE OR PRINT)**

1. _Greystar Real Estate Partners, LLC % Robert Faith, CEO/President_
Address _11 State St._
_Charleston, SC 29401_ Type* _Certified Mail_

2. _____
Address_____
_____ Type* _____

3. _____
Address_____
_____ Type* _____

4. _____
Address_____
_____ Type* _____

5. _____
Address_____
_____ Type* _____

**\*Type: Sheriff; Constable Pct.___; Private Process; Certified Mail; Registered Mail; Out o**
**County; Out of State; Secretary of State; Commissioner of Insurance;**

Title of Document/Pleading to be attached to process _Petition_

Name and Address of Attorney: _Thomas C. Retzloff, Esq._
_PO Box 92_
_San Antonio, TX 78291-0092_

Attorney's Bar No. _____
Attorney for Plaintiff _✓_ Defendant _____ Other _____

**Name of witness:** _____

**The above witness is requested to bring the following books, papers, documents or tangible things as follows:**

**Name of witness:** _____
**The above witness is requested to bring the following books, papers, documents or tangible things as follows:**

**Name of witness:** _____
**The above witness is requested to bring the following books, papers, documents or tangible things as follows:**

**Name of witness:** _____
**The above witness is requested to bring the following books, papers, documents or tangible things as follows:**

DEPUTY

**Name of witness:** _____
**The above witness is requested to bring the following books, papers, documents or tangible things as follows:**

FILED
DISTRICT CLERK
BEXAR CO. TEXAS

CERTIFIED MAIL #71603901984295

"The State of Texas"                     NO.   2006-CI-11334

THOMAS RETZLAFF                                        IN THE DISTRICT COURT
Plaintiff
vs.
                                                        37th  JUDICIAL DISTRICT
BRENT WILSON ET AL
Defendant                                              BEXAR COUNTY, TEXAS
( Note: Attached Document May Contain Additional Litigants. )     **NOTICE**

**Citation** Directed to:  BRENT WILSON
                           CHOICEPOINT SERVICES INC

                           12770 COIT ROAD STE 100
                           DALLAS TX  75251

"You have been sued.  You may  employ  an attorney.  If you or your  attorney do not
file a written answer  with  the  clerk  who  issued  this  citation  by  10:00 a.m. on the
Monday next  following  the  expiration  of  twenty  days  after  you were  served this
citation and petition,  a  default  judgment  may  be  taken  against  you."  Said petition
was filed on the  25th  day of  July_____ ,  2006  .
ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS  26th  DAY OF  July_____
A.D.,  2006  .

PLAINTIFF'S ORIGINAL PETITION
AND REQUESTS FOR DISCLOSURE

                                                        MARGARET G. MONTEMAYOR
                                                        District Clerk of Bexar County, Texas
THOMAS RETZLAFF                                        Bexar County Courthouse
Attorney/PROPIA PERSONA                                San Antonio, Texas  78205
address
POBOX 92                                               By: Joann M. Campos Deputy
SAN ANTONIO, TX 78291                                     JOANN CAMPOS

─────────────────────────────────────────────────────────────────────

                           OFFICER'S RETURN

Came to hand on the  26th  day . of  July_____ ,  A.D.,  2006   at  1:07  o'clock  P .M. and
EXECUTED  (NOT EXECUTED)  by CERTIFIED MAIL, on the ____ day  of  _____,  A.D.,
_____, by delivering to _____ a true copy of this
_____citation_____, upon which I endorsed the date of delivery, together
with the accompanying copy of the  PLAINTIFF'S ORIGINAL PETITION_____
AND REQUESTS FOR DISCLOSURE_____
_____.
_____
Cause of failure to execute this _____ is _____.

                           MARGARET G. MONTEMAYOR
                           Clerk of the District Courts of
                           Bexar County, Texas

                           By _____ Deputy
                               JOANN CAMPOS

                                        **FILE COPY**
                                          (DK003)

CERTIFIED MAIL #71603901984295 )

"The State of Texas"    NO.  2006-CI-11334

THOMAS RETZLAFF
Plaintiff
vs.

BRENT WILSON ET AL
Defendant
( Note: Attached Document May Contain Additional Litigants. )    **NOTICE**

IN THE DISTRICT COURT

37th  JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

**Citation** Directed to:  GREYSTAR REAL ESTATE PARTNERS LLC
BY SERVING ITS PRESIDENT/CEO,
ROBERT FAITH

11 STATE STREET
CHARLESTON SC  29401

"You have been sued.  You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you." Said petition was filed on the  25th  day of  July , 2006 .
ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS  31st  DAY OF  July
A.D.,  2006 .

PLAINTIFF'S ORIGINAL PETITION
AND REQUESTS FOR DISCLOSURE

THOMAS RETZLAFF
Attorney/PROPIA PERSONA
address
POBOX 92
SAN ANTONIO, TX 78291

MARGARET G. MONTEMAYOR
District Clerk of Bexar County, Texas
Bexar County Courthouse
San Antonio, Texas 78205

By: *Joann M. Campos*  Deputy
JOANN CAMPOS

---

### OFFICER'S RETURN

Came to hand on the  31st  day of  July , A.D.,  2006  at  10:04  o'clock  A .M. and EXECUTED  (NOT EXECUTED)  by CERTIFIED MAIL, on the _____ day of _____, A.D., _____, by delivering to _____ a true copy of this _____ citation _____, upon which I endorsed the date of delivery, together with the accompanying copy of the  PLAINTIFF'S ORIGINAL PETITION _____
AND REQUESTS FOR DISCLOSURE _____
_____
_____.

Cause of failure to execute this _____ is _____.

MARGARET G. MONTEMAYOR
Clerk of the District Courts of
Bexar County, Texas

By _____ Deputy
JOANN CAMPOS

FILE COPY
(DK003)

CERTIFIED MAIL #7160390198429 06

"The State of Texas"                    NO.   2006-CI-11334

THOMAS RETZLAFF                                          IN THE DISTRICT COURT
Plaintiff
vs.                                                      37th  JUDICIAL DISTRICT

BRENT WILSON ET AL                                       BEXAR COUNTY, TEXAS
Defendant
( Note: Attached Document May Contain Additional Litigants. )     NOTICE

Citation Directed to:  BRENT WILSON
                       CHOICEPOINT SERVICES INC

                       12770 COIT ROAD STE 100
                       DALLAS TX  75251

"You have been sued.  You may  employ  an  attorney.  If you or your  attorney do not
file a written answer  with the clerk who  issued this citation by  10:00 a.m. on the
Monday next  following  the  expiration  of  twenty  days  after  you  were  served this
citation and petition, a default judgment may be taken against you." Said petition
was filed on the  25th  day of  July         ,  2006  .
ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS  26th  DAY OF  July
A.D.,  2006  .

PLAINTIFF'S ORIGINAL PETITION
AND REQUESTS FOR DISCLOSURE

                                                        ARET G. MONTEMAYOR
                                                        of Bexar County, Texas
                                                        y Courthouse
                                                         Texas  78205

                                                        M. Campos Deputy
                                                        AMPOS

BRENT WILSON
CHOICEPOINT SERVICES INC
12770 COIT ROAD STE 100
DALLAS, TX  75251

                                                        1:07  o'clock  P .M. and
2006CI11334  7726/2006  CITCM JOANN CAMPOS              f  JULY       ,  A.D.,
                                                           a true copy of this
                                                        late of delivery, together

PS Form 3800, January 2005    US Postal Service    **Certified Mail Receipt**
                                                        2

                    MARGARET G. MONTEMAYOR
                    Clerk of the District Courts of
                    Bexar County, Texas

                    By                              Deputy
                         JOANN CAMPOS

                                          RETURN TO COURT
                                              (DK003)



FILED
3:38 O'CLOCK P M
JUL 3 1 2006
MARGARET G. MONTEMAYOR
District Clerk
Bexar County, Texas
BY_____ DEPUTY

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
MARGARET G. MONTEMAYOR, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORD FILED ON____7-31-06____
WITNESS MY OFFICIAL HAND AND SEAL OF OFFICE THIS

AUG 2 2 2006

MARGARET G. MONTEMAYOR
BEXAR COUNTY, TEXAS
BY_____ DEPUTY

CERTIFIED MAIL #7160390198429

"The State of Texas"                    NO. __2006-CI-11334__

THOMAS RETZLAFF                                    IN THE DISTRICT COURT
Plaintiff
vs.                                                __37th__ JUDICIAL DISTRICT
BRENT WILSON ET AL
Defendant                                          BEXAR COUNTY, TEXAS
( Note: Attached Document May Contain Additional Litigants. )    **NOTICE**

**Citation** Directed to: GREYSTAR REAL ESTATE PARTNERS LLC
                          BY SERVING ITS PRESIDENT/CEO,
                          ROBERT FAITH

| US Postal Service | | Postage | $ | |
| **Certified Mail** | | Certified Fee | | |

your attorney do not
by 10:00 a.m. on the
ou were served this
st you." Said petition

DAY OF __July__

YSTAR REAL ESTATE PARTNERS LLC
SERVING ITS PRESIDENT/CEO,
STATE STREET                                       G. MONTEMAYOR
RLESTON, SC 29401                                  of Bexar County, Texas
                                                   y Courthouse
CI 11334  7/31/2006  CITCM JOANN CAMPOS            , Texas 78205

                                                   _Campos_ Deputy
                                                   JOANN CAMPOS

---

## OFFICER'S RETURN

Came to hand on the __31st__ day of __July__, A.D., __2006__ at __10:04__ o'clock __A__.M. and
EXECUTED (NOT EXECUTED) by CERTIFIED MAIL on the __3__ day of __AUS__, A.D.,
____ By delivering to __T. Crumbler__ a true copy of this
____ citation ____, upon which I endorsed the date of delivery, together
with the accompanying copy of the __PLAINTIFF'S ORIGINAL PETITION__
AND REQUESTS FOR DISCLOSURE

Cause of failure to execute this _____ is _____.

                    MARGARET G. MONTEMAYOR
                    Clerk of the District Courts of
                    Bexar County, Texas

                    By _JoAnn Campos_ Deputy
                       JOANN CAMPOS

                                        RETURN TO COURT
                                            (DK003)

FILED

_____ O'CLOCK _____ M

AUG 0 7 2006

District Clerk
Bexar County, Texas

BY ~~~~~~~~~~~  DEPUTY

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
MARGARET G. MONTEMAYOR BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORD FILED ON _8-7-06_
WITNESS MY HAND AND SEAL OF OFFICE THIS

AUG 2 2 2006

MARGARET G. MONTEMAYOR
BEXAR COUNTY, TEXAS

By: _____ Baker     DEPUTY

# 2006CI11334



Cause No._____

THOMAS RETZLAFF,  
  Plaintiff,

Vs.

BRENT WILSON,  
CHOICEPOINT SERVICES, INC.,  
ROBERT FAITH, STACEY HUNT,  
JOHN and/or JANE DOE,  
and GREYSTAR REAL ESTATE  
PARTNERS, LLC,  
  Defendants.

IN THE DISTRICT COURT

OF BEXAR COUNTY, TEXAS

**37th** JUDICIAL DISTIRCT

## PLAINTIFF'S ORIGINAL
## <u>PETITION AND REQUESTS FOR DISCLOSURE</u>

### <u>A. Discovery Control Plan</u>

1.    Because damages are less than $50,000, plaintiff intends to conduct discovery under Level 1 of Texas Rule of Civil Procedure 190.

### <u>B. Parties</u>

2.    Plaintiff is an individual who resides in Bexar County, Texas.

3.    Defendant No. One, Brent Wilson, an individual who is a resident of Texas, may be served with process at his place of employment, Choicepoint Services, Inc., 12770 Coit Road, Suite 100, Dallas, Dallas County, Texas 75251.

1

4.   Defendant No. Two, Choicepoint Services, Inc., a foreign corporation organized and existing under the laws of the State of Georgia, whose principal office is located at 1000 Alderman Drive Mall Stop 71N, Alpharetta, Georgia 30005, is authorized to do business in Texas and may be served with process by serving its registered agent for service of process, Prentice Hall, at 800 Brazos, Austin, Travis County, Texas 78701.

5.   Defendant No. Three, Robert Faith, an individual who is a resident of South Carolina, may be served with process at his place of employment, Greystar Real Estate Partners, LLC, at 11 State Street, Charleston, South Carolina 29401.

6.   Defendant No. Four, Stacey Hunt, an individual who is a resident of Texas, may be served with process at his place of employment, Greystar Real Estate Partners, LLC, 20610 Tree Meadow, San Antonio, Bexar County, Texas 78258.

7.   Defendant No. Five, Greystar Real Estate Partners, LLC, a foreign corporation organized and existing under the laws of the State of South Carolina, whose principal office is located at 11 State Street, Charleston, South Carolina 29401, is authorized to do business in Texas and may be served with process by serving its President / CEO, Robert Faith, at that address.

8.   John and/or Jane Doe, unknown defendant(s), are individuals and/or corporations, and/or partnerships, and/or governmental agencies and/or officials, and/or entities, whose exact names and locations are unknown at this time to the plaintiff.

## C. Jurisdiction

9.      The court has jurisdiction over the controversy because the damages are within

the jurisdictional limits of the court.

## D. Venue

10.     Venue is proper in Bexar County, Texas.  Specifically, venue is allowed in this

county because all or a substantial part of the events or omissions occurred in this county.

Tex.Civ.Prac. & Rem.Code §15.002(a)(1).

## E. Facts

11.     This lawsuit results from an apartment lease entered into between the plaintiff and

defendant Greystar Real Estate Partners, LLC, ("Greystar"), for an apartment at The San

Miguel Apartments in San Antonio, Texas, on July 5, 2006.  Said lease was to cover the

rental of an apartment unit starting July 31, 2006, through July 30, 2007.  On or about

July 19, 2006, defendant Greystar announced to plaintiff that it was breaking the lease

based upon information and instructions from defendants Wilson and Choicepoint

Services, Inc. ("Choicepoint"), along with John and/or Jane Doe, unknown defendants.

Defendants Wilson and Choicepoint, along with John and/or Jane Doe, unknown

defendants, are in the business of providing tenant screening services through the running

of credit and background checks.  Defendant Greystar is but one of their many clients.

12.     On or about July 19, 2006, defendants Wilson and Choicepoint, along with John

and/or Jane Doe, unknown defendants, made statements to defendant Greystar and others

3

to the effect that plaintiff had numerous felony and misdemeanor convictions.  Said

information was false and/or inaccurate.  Without bothering to contact the plaintiff to

determine the truth or falsity of these allegation, defendants Wilson and Choicepoint,

along with John and/or Jane Doe, unknown defendants, further instructed defendant

Greystar that it should terminate plaintiff's apartment lease even though defendants

Wilson and Choicepoint, along with John and/or Jane Doe, unknown defendants, knew

that plaintiff had a valid and binding contract with defendant Greystar.

13.     When plaintiff was contacted by defendant Greystar's representative at The San

Miguel Apartments about the lease termination, plaintiff traveled to the apartment office

so he could find out why the lease was being broken.  While in the office lobby defendant

"John Doe" (an unknown Greystar employee) stated in a loud and clear voice in front of

<u>numerous</u> tenants and prospective tenants that plaintiff's lease was being terminated due

to instructions from defendants Wilson and Choicepoint on account of plaintiff having

problems with his credit and "numerous serious felony convictions."

14.     Defendant Choicepoint is in the business of providing consumer credit reports.

As such, it is required to fully comply with each and every provision of the federal Fair

Credit Reporting Act ("FCRA"), Title 15 U.S.C. §1861 *et seq.*  When plaintiff discovered

the reasons behind the lease termination he contacted Choicepoint to dispute the accuracy

of their report.  Plaintiff specifically informed these defendants that he had been the

victim of identity theft many years ago (with a report filed with the Federal Trade

Commission, as required by law) and that this information was probably the result of it.

Defendant Wilson, along with other "John Doe" defendants specifically told plaintiff that

4

they and Choicepoint were <u>not covered</u> by the FCRA and that they would take no steps to investigate plaintiff's complaint of inaccurate information, that it would "be too much trouble."

15.     Because of these defendants' false and inaccurate report, plaintiff's apartment lease was broken and he was denied housing.

16.     Defendant Wilson's and Choicepoint's (along with John and/or Jane Doe, unknown defendants') false and inaccurate reports were a result of their failure to maintain and follow reasonable procedures to assure maximum possible accuracy.

17.     Defendants acted negligently and/or intentionally with malice regarding the truth of their statements.

18.     Furthermore, these defendants relied on sources of information which are well known for providing false, misleading and/or inaccurate information about consumers.

19.     Because defendant Choicepoint is the leading provider of tenant screening services, plaintiff has been unable to secure additional housing because he has been placed on a black-list or "Do Not Rent" list by these defendants and these same defamatory statements have been repeated over and over to other prospective landlords.

<u>F. Count 1 – Breach of Contract</u>

20.     As stated above, on July 5, 2006, plaintiff and defendant Greystar entered into a valid and enforceable contract for the leasing of an apartment.  Plaintiff fully or substantially performed his portion of the contract by paying a deposit, administrative

fees, and rent for the proposed apartment. Once the contract was signed by plaintiff and

defendant Greystar there was nothing left for final approval by the defendant or any other

third party. Nor is there anything in the contract regarding the necessity of final approval

by defendant or any third party. Defendant Greystar breached the contract in a material

way by telling plaintiff that it was terminating the lease and that plaintiff could no longer

reside there. Defendant also failed to follow the proper procedures that are contained

within the lease when it wants to declare that the plaintiff is in default. The defendant's

breach of the contract has caused injury to the plaintiff since he no longer has any

housing.

### G. Count 2 – Tortious Interference with Existing Contract

21.    As stated above, plaintiff and defendant Greystar had a valid leasing contract.

Defendants Wilson and Choicepoint, along with John and/or Jane Doe, unknown

defendants, willfully and intentionally interfered with that contract by telling defendant

Greystar not to rent to plaintiff and that they should terminate the lease. These

defendants were a stranger to the contract, but had full and complete knowledge of it.

But for the actions of these defendants, plaintiff would have been able to keep his

apartment and contract with Greystar.

### H. Count 3 - Defamation

22.    As stated above, all of these defendants made and/or published statements of fact

that plaintiff had numerous, specifically named felonies and misdemeanors, and "bad

credit." Said statements are defamatory *per* se in that they charge the plaintiff with the

6

commission of crimes and are false and/or inaccurate, and/or omitted material facts, and were made with reckless disregard as to the truth or falsity thereof.

23.     Furthermore, defendants Wilson and Choicepoint, along with John and/or Jane Doe, unknown defendants, had a duty of care to the plaintiff in that these defendants had a duty to publish accurate information and to maintain procedures for ensuring that false and misleading information was not published.  Additionally, these defendants had a duty to not rely on sources of information which are well known for providing false and/or inaccurate information about consumers.  These defendants breached that duty and as a result of said breach, plaintiff was injured.

### I. Count 4 - Fair Credit Reporting Act Violations

24.     Defendants Wilson and Choicepoint, along with John and/or Jane Doe, unknown defendants, willfully failed to comply with the Fair Credit Reporting Act including, but not limited to, 15 U.S.C. §1681 *et seq.*, §1681c(a)(2), §1681e, §1681e(b), §1681i, and §1681k, and as such plaintiff suffered damages, to include out-of-pocket losses, termination of his apartment lease, loss of housing, and being placed on an apartment black list.

25.     In the alternative, these defendants negligently failed to comply with the Fair Credit Reporting Act including, but not limited to, 15 U.S.C. §1681 *et seq.*, §1681c(a)(2), §1681e, §1681e(b), §1681i, and §1681k, and as such plaintiff suffered damages, to include out-of-pocket losses, termination of his apartment lease, loss of housing, and being placed on an apartment black list.

26.     As stated above, these defendants published certain reports or statements to

defendant Greystar.  The consumer report contained numerous false and/or inaccurate

statements.  The inaccurate information was included in the consumer credit report due to

these defendants' failure to follow reasonable procedures to assure maximum possible

accuracy.

27.     Plaintiff's injuries were caused by the inclusion of the inaccurate and/or false

information in the report.  Additionally, the report contained misleading and/or materially

incomplete information causing plaintiff harm.

28.     These defendants wholly refused to retract the false and/or inaccurate

information, and they wholly refused to allow plaintiff to dispute the information and

they wholly refused to conduct an investigation into plaintiff's allegations that the

information was false, inaccurate, incomplete, and/or misleading – even though the Fair

Credit Reporting Act requires them to do so!!


### J. Count 5 – Negligence

29.     Defendants Greystar, Faith, and Hunt are guilty of the negligent hiring, training,

supervision, and retention of John and/or Jane Doe, unknown defendants and Greystar

employees who were working at The San Miguel Apartments.  Specifically, the plaintiff

was owed a legal duty by defendants Greystar, Faith, and Hunt to hire, supervise, train,

and/or retain competent employees.  That duty was breached because John and/or Jane

Doe, unknown defendants and Greystar employees have committed actionable torts due

to their mishandling of plaintiff's apartment lease, publishing false and defamatory

8

statements about plaintiff and his credit worthiness to other individuals, as stated above. If defendant Greystar, Faith, and Hunt had acted properly, then plaintiff would have been able to keep his housing.

### K. Count 6 – Malice

30.     The defendants' conduct amounted to malice under Texas Civil Practice & Remedies Code §41.001(7) because the defendants' acts or omissions (as outlined above), when viewed objectively from the defendants' standpoint, involved an extreme degree of risk and the defendants had actual, subjective awareness of the risk, but proceeded anyway with a conscious indifference to the rights, safety, or welfare of others.

### L. Damages

31.     As a proximate cause of defendants' conduct, plaintiff suffered the following injuries:  economic loss and out-of-pocket expenses due to the lease being terminated and the plaintiff losing his housing, and damage to his credit and reputation.  As a result of plaintiff's injuries, plaintiff suffered the following damages:

    a. Economic loss.

    b. Loss of the benefit of the contract.

### M. Conditions Precedent

32.     All conditions precedent to plaintiff's claim for relief has been performed or has occurred.

9

### N. Demand for Jury

33.     Plaintiff demands a jury trial and tenders the appropriate fee.

### O. Requests for Disclosure

34.     Under Texas Rule of Civil Procedure 194, all defendants are requested to

disclose, within 50 days of service of this request, the information or material described

in Texas Rule of Civil Procedure 194.2(a) – (i).

### P. Prayer

35.     For these reasons, plaintiff asks that defendants be cited to appear and answer and

that plaintiff have judgment against defendants for the following:

 a. Actual damages within the jurisdictional limits of this court.

 b. Exemplary damages as allowed by law.

 c. Prejudgment and post-judgment interest as allowed by law, from the date of the
 injury to the date of judgment in this case.

 d. Costs of suit.

 e. All other relief, in law and in equity, to which plaintiff may be entitled.

Respectfully submitted,

Thomas C. Retzlaff, Esq.
PO Box 92
San Antonio, Texas 78291-0092
(210) 317-9800  OFFICE
(210) 877-6034  FAX

ATTORNEY FOR PLAINTIFF

10



**TEXAS APARTMENT ASSOCIATION**

## Apartment Lease Contract

**MEMBER**

Date of Lease Contract: _July 5, 2006_
(when this Lease Contract is filled out)

*This Lease Contract* (filled out before January 1, 2008.)

*This is a binding contract. Read carefully before signing.*

Moving In — General Information

1. **PARTIES.** This Lease Contract is between *you*, the resident(s) (*list all people signing the Lease Contract*): _Thomas Retzlaff_

_____ and *us*, the owner:
_- The San Miguel_

_____
(*name of apartment community or title holder*). You've agreed to rent Apartment No. _917_ , at _5202 Texana Drive_
_____ (*street address*)
in _San Antonio_ (*city*),
Texas, _78249_ (*zip code*) for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above and not to property managers or anyone else. Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor must be executed.

2. **OCCUPANTS.** The apartment will be occupied only by you and (*list all other occupants not signing the Lease Contract*):
_ABOVE ONLY_

_____

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than _10_ consecutive days without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, two days per month is the limit.*

3. **LEASE TERM.** The initial term of the Lease Contract begins on the _31st_ day of _July_ , _2006_ (year), and ends at midnight the _30th_ day of _July_ , _2007_ (year). This Lease Contract will automatically renew month-to-month unless either party gives at least _60_ days written notice of termination or intent to move-out as required by paragraph 37. *If the number of days isn't filled in, at least 30 days notice is required.*

4. **SECURITY DEPOSIT.** The total security deposit for all residents is $ _245.00_ , due on or before the date this Lease Contract is signed. This amount [*check one*]: ☐ does or ☒ does not include an animal deposit. Any animal deposit will be stated in an animal addendum. See paragraphs 41 and 42 for security deposit return information.

5. **KEYS AND FURNITURE.** You will be provided _3_ apartment key(s), _1_ mailbox key(s), and _3_ other access devices for _Remote_ . Any resident, occupant, or spouse who, according to a remaining resident's affidavit, has permanently moved out or is under court order to not enter the apartment, is (at our option) no longer entitled to occupancy, keys, or other access devices. Your apartment will be [*check one*]: ☐ furnished or ☐ unfurnished.

6. **RENT AND CHARGES.** You will pay $ _805.75_ per month for rent, in advance and without demand [*check one*]:

☒ at the on-site manager's office, or
☒ at _the office drop slot_

Prorated rent of $ _26.86_ is due for the remainder of [*check one*]:
☐ 1st month or ☐ 2nd month, on _____ (year). Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. If you don't pay all rent on or before the _3rd_ day of the month and we haven't given notice to vacate before that date, you'll pay an initial late charge

of $ _75.00_ plus a late charge of $ _15.00_ per day after that date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. You'll also pay a charge of $ _40.00_ for each returned check or rejected automatic electronic draft, plus initial and daily late charges from due date until we receive acceptable payment. If you don't pay rent on time, you'll be delinquent and all remedies under state law and this Lease Contract will be authorized. If you violate the animal restrictions of paragraph 27 or other animal rules, you'll pay an initial charge of $ _100.00_ per animal (not to exceed $100 per animal) and a daily charge of $ _10.00_ per animal (not to exceed $10 per day per animal) from the date the animal was brought into your apartment until it is finally removed. We'll also have all other remedies for such violation.

7. **UTILITIES.** We'll pay for the following items, if checked: ☐ gas ☐ water ☐ wastewater ☐ electricity ☐ trash ☐ cable TV ☐ master antenna ☐ Internet service ☐ other utilities _____

You'll pay for all other utilities, related deposits, and any charges or fees, on such utilities during your Lease Contract term. You must not allow any utilities (other than cable TV) to be cut off or switched for any reason—including disconnection for not paying your bills—until the Lease Contract term or renewal period ends. If a utility is submetered or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules. If a utility is individually metered, it must be connected in your name and you must notify the utility provider of your move-out date so the meter can be timely read. If you delay getting it turned on in your name by lease commencement or cause it to be transferred back into our name before you surrender or abandon the unit, you'll be liable for a $ _____ charge (not to exceed $50), plus the actual or estimated cost of the utilities used while the utility should have been connected in your name. If you are in an area open to competition and your unit is individually metered, you may choose or change your retail electric provider at any time. If you qualify, your provider will be the same as ours, unless you choose a different provider. If you choose or change your provider, you must give us written notice. You must pay all applicable provider fees, including any fees to change service back into our name after you move out.

8. **INSURANCE.** *Our insurance does not cover your personal property. We urge you to get insurance for losses due to theft, fire, water damage, and the like.* You intend to [*check one*]:
☐ not buy insurance to protect against such losses, or
☐ buy insurance from your own agent to cover such losses.
*If neither is checked, you acknowledge that you will not have insurance coverage.*

9. **SECURITY DEVICES. What We Must Provide.** Texas law requires, with some exceptions, that we must provide at no cost to you when occupancy begins: (1) a window latch on each window; (2) a doorviewer (peephole) on each exterior door; (3) a pin lock on each sliding door; (4) either a door handle latch or a security bar on each sliding door; (5) a keyless bolting device (deadbolt) on each exterior door. Keyed, lock(s) and deadbolt lock or a keyed deadbolt lock on one entry door. Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in, as required by statute. If we fail to install or rekey security devices as required by the Property Code, you have the right to do so and deduct the reasonable cost from your next rent payment under Section 92.165(1) of the Code.

**What You Are Now Requesting.** Subject to some limitations, under Texas law you may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a security bar on a sliding glass door if it does not have one; and (3) change or rekey locks or latches. We must comply with those requests, but you must pay for them. Subject to statutory restrictions on what security devices you may request, you are now requesting us to install or change at your expense:

_____

*If no item is filled in, then you are requesting none at this time.*

**Payment.** We will pay for missing security devices that are required by statute. You will pay for: (1) rekeying that you request (except when we failed to rekey after the previous resident moved out); and (2) repairs or replacements due to misuse or damage by you or your family, occupants, or guests. You must pay immediately after the work is done unless state statute authorizes advance payment. You also must pay for additional or changed security devices you request, in advance or afterward, at our option.

Special Provisions and What If Clauses

10. **SPECIAL PROVISIONS.** The following or attached special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

_Rent is due on the 1st, late on the 4th._
_No checks after the 3rd. No cash_
_accepted. Late rent voids the monthly_
_concession._

_____

11. **UNLAWFUL EARLY MOVE-OUT; RELETTING CHARGE.** You'll be liable for a reletting charge of $ _684.88_ (not to exceed 85% of the highest monthly rent during the Lease Contract term) if you:
(1) fail to move in, or fail to give written move-out notice as required in paragraphs 23 or 37; or
(2) move out without paying rent in full for the entire Lease Contract term or renewal period; or
(3) move out at our demand because of your default; or
(4) are judicially evicted.
*The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract. See the first paragraph of page 2.*

Thomas Retzlaff
Your Initials:  , Initials of Our Representative: _JK_     Apartment Lease Contract     © 2005, Texas Apartment Association, Inc.     Page 1 of 6

0705200603260

**Not a Release.** The reletting charge is not a Lease cancellation or buyout fee. It is a liquidated amount covering part of our damages; that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain—particularly those relating to make ready, inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from continued liability for: future or past-due rent; charges for cleaning, repairing, repainting, or unreturned keys; or other sums due.

**12. DAMAGES AND REIMBURSEMENT.** You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community due to: a violation of the Lease Contract or rules; improper use; negligence; other conduct by you or your invitees, guests or occupants; or any other cause not due to our negligence or fault. You will indemnify and hold us harmless from all liability arising from the conduct of you, your invitees, guests, or occupants, or our representatives who perform at your request services not contemplated in this Lease Contract. <u>Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following if occurring during the Lease Contract term or renewal period: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment.</u> We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**13. CONTRACTUAL LIEN AND PROPERTY LEFT IN APARTMENT.** <u>All property in the apartment is (unless exempt under Section 54.042 of the Texas Property Code) subject to a contractual lien to secure payment of delinquent rent.</u> For this purpose, "apartment" excludes common areas but includes interior living areas and exterior patios, balconies, attached garages, and storerooms for your exclusive use.

**Removal After We Exercise Lien for Rent. If your rent is delinquent, our representative may peaceably enter the apartment and remove and/or store all property subject to lien.** Written notice of entry must be left afterwards in the apartment in a conspicuous place—plus a list of items removed. The notice must state the amount of delinquent rent and the name, address, and phone number of the person to contact about the amount owed. The notice must also state that the property will be promptly returned when the delinquent rent is fully paid. All property in the apartment is presumed to be yours unless proven otherwise.

**Removal After Surrender, Abandonment, or Eviction.** We or law officers may remove or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment (see definitions in paragraph 42).

**Storage.** We will store property removed under a contractual lien. We may, but have no duty to, store property removed after judicial eviction, surrender, or abandonment of the apartment. We're not liable for casualty loss, damage, or theft except for property removed under a contractual lien. You must pay reasonable charges for our packing, removing, storing, and selling any property. We have a lien on *all* property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe, with one exception: Our lien on property listed under Property Code Section 54.042 is limited to charges for packing, removing, and storing.

**Redemption.** If we've seized and stored property under a contractual lien for rent as authorized by the Property Code, you may redeem the property by paying all delinquent rent due at the time of seizure. But if notice of sale (set forth as follows) is given before you seek redemption, you may redeem only by paying the delinquent rent and reasonable charges for packing, removing, and storing. If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, reletting charges, storage, damages, etc. We may return

redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

**Disposition or Sale.** Except for animals and property removed after the death of a sole resident, we may throw away or give to a charitable organization all items of personal property that are: (1) left in the apartment after surrender or abandonment; or (2) left outside more than 1 hour after writ of possession is executed, following judicial eviction. Animals removed after surrender, abandonment, or eviction may be kenneled or turned over to local authorities or humane societies. Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of date, time, and place of sale is sent by both regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. Sale may be public or private, is subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. Proceeds exceeding sums owed must be mailed to you at your last known address within 30 days after sale.

**14. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, all future rent will be automatically accelerated without notice and immediately due. We also may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights, remedies, and duties under paragraphs 11 and 32 apply to acceleration under this paragraph.

**15. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 18. If, at least 5 days before the advance notice deadline referred to in paragraph 3, we give you written notice of rent increases or Lease Contract changes effective when the Lease Contract term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or Lease Contract changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 37. The written move-out notice under paragraph 37 applies only to the end of the current Lease Contract or renewal period.

**16. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the Lease Contract begins—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the effective Lease Contract date and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after you receives written notice, but not later. The readiness date is considered the new effective Lease Contract date for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**17. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it. At our request, any utility provider may furnish us information about pending or actual connections or disconnections of utility service to your unit.

**18. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

**19. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in or near pools and all other common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or heaters without our prior written approval; cook on balconies or outside; or solicit

business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

**20. PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: criminal conduct; behaving in

Thomas Retzlaff

Your Initials:  , Initials of Our Representative: ᴊK          Apartment Lease Contract     © 2005, Texas Apartment Association, Inc.     Page 2 of 6

a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, or possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; using windows for entry or exit; heating the apartment with a gas-operated cooking stove or oven; or injuring our reputation by making bad faith allegations against us to others.

**21. PARKING.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motorcycles or motorized bikes may not be parked inside an apartment unit or on sidewalks, under stairwells, or in handicapped parking areas. We may have unauthorized or illegally parked vehicles towed according to state law at the owner or operator's expense at any time if it:

(1)  has a flat tire or is otherwise inoperable; or
(2)  is on jacks, blocks or has wheel(s) missing; or
(3)  takes up more than one parking space; or
(4)  belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(5)  is in a handicap space without the legally required handicap insignia; or
(6)  is in a space marked for office visitors, managers, or staff; or
(7)  blocks another vehicle from exiting; or
(8)  is in a fire lane or designated "no parking" area; or
(9)  is in a space marked for other resident(s) or unit(s); or
(10) is on the grass, sidewalk, or patio; or
(11) blocks garbage trucks from access to a dumpster; or
(12) has no current license, registration or inspection sticker, and we give you at least 10 days notice that the vehicle will be towed if not removed.

**22. RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 10, 16, 23, 31, or 37, won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, death, or property purchase.

**23. MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1)  you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; *and*
(2)  you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, *or* (iii) are relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or letter. Military permission for base housing doesn't constitute a permanent change-of-station order. After your move out, we'll return your security deposit, less lawful deductions. For the purposes of this Lease Contract, orders described in (2) above will only release the resident who qualifies under (1) and (2) above and receives the orders during the Lease Contract term and such resident's spouse or legal dependents living in the resident's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10, you represent when signing this Lease Contract that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Lease Contract term; and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 32. You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**24. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors, door and window locks, and other safety or security devices. You agree to make every effort to follow the Security Guidelines on page 5. Window screens are not for security or keeping people from falling out.

**Smoke Detectors.** We'll furnish smoke detectors as required by statute or city ordinance, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke detector malfunctions to us. Neither you nor others may disable usable smoke detectors. *If you damage or disable the smoke detector or remove a battery without replacing it with a working battery, you may be liable to us under Section 92.2611 of the Property Code for $100 plus one month's rent, actual damages, and attorney's fees.* You also will be liable to us and others if: (1) you fail to report malfunctions or (2) any loss, damage, or fines result from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from fire, smoke, rain, flood, water leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. Unless

other wise stated, you must—for 24 hours a day during freezing weather—(1) keep the apartment heated to at least 55 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. Even if previously provided, we're not obligated to furnish security personnel, patrols, lighting, gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**25. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. We disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in. Within 48 hours after move-in, you must sign and note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not do any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water fixture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**26. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST--FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS--IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; mold; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are normally not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections, taking into consideration when casualty insurance proceeds are received. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract by giving you at least 5 days written notice. We may also remove damaged personal property if it causes a health or safety hazard. If the Lease Contract is so terminated, we'll refund prorated rental and deposits, less lawful deductions.

**27. ANIMALS.** *No animals (including mammals, reptiles, birds, fish, rodents, amphibians, arachnids and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing.* If we allow an animal, you must sign a separate animal addendum and pay an animal deposit. An animal deposit is considered a general deposit. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation

0705200603 4504

charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 28. We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

**28. WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives, or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. If nobody is in the apartment, then such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary) if:

(1)  written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; *and*

(2)  entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; checking for water leaks; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment, or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or

rekeying unauthorized security devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government representatives for the limited purpose of determining housing and fire ordinance compliance, and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

**29. MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of Lease Contract termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Any resident who defaults under this Lease Contract will indemnify the non-defaulting residents and their guarantors. Security deposit refunds may be by one check jointly payable to all residents; the check and any deduction itemizations may be mailed to one resident only.

**Replacements**

**30. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed *only when we consent in writing.* If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then:

(1)  a reletting charge *will not* be due;

(2)  a reasonable administrative (paperwork) fee *will* be due, and a rekeying fee *will* be due if rekeying is requested or required; and

(3)  the departing and remaining residents *will* remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; *or* (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing–even if a new Lease Contract is signed.

**Default by Either Party**

**31. DEFAULT BY OWNER.** We'll act with customary diligence to:

(1)  keep common areas reasonably clean, subject to paragraph 25;

(2)  maintain fixtures, hot water, heating, and A/C equipment;

(3)  substantially comply with all applicable laws regarding safety, sanitation, and fair housing; and

(4)  make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

If we violate any of the above, you may possibly terminate this Lease Contract and exercise other remedies under Property Code Section 92.056 by following this procedure:

(a)  all rent must be current and you must make a written request for repair or remedy of the condition–after which we'll have a reasonable time for repair or remedy;

(b)  if we fail to do so, you must make a second written request for the repair or remedy (to make sure that there has been no miscommunication between us)–after which we'll have a reasonable time for the repair or remedy; and

(c)  if the repair or remedy still hasn't been accomplished within that reasonable time period, you may immediately terminate this Lease Contract by giving us a final written notice. You also may exercise other statutory remedies.

Instead of giving the two written requests referred to above, you may give us one request by certified mail, return receipt requested, or by registered mail–after which we will have a reasonable time for repair or remedy. "Reasonable time" takes into account the nature of the problem and the reasonable availability of materials, labor, and utilities. Your rent must be current at the time of our request. We will refund security deposits and prorated rent as required by law.

**32. DEFAULT BY RESIDENT.** You'll be in default if: (1) you don't pay rent or other amounts that you owe on time; (2) you or any guest or occupant violates this Lease Contract, apartment rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, charged, detained, convicted, or given deferred adjudication or pretrial diversion for (i) a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia as defined in the Texas Controlled Substances Act, or (ii) any sex-related crime, including a misdemeanor; (6) any illegal drugs or paraphernalia are found in your apartment; or (7) you or any occupant, in bad faith, makes an invalid habitability complaint to an official or employee of a utility company or the government.

**Eviction.** *If you default, we may end your right of occupancy by giving you a 24-hour written notice to vacate.* Notice may be by: (1) regular mail; (2) certified mail, return receipt requested; (3) personal delivery to any resident; (4) personal delivery at the apartment to any occupant over 16 years old; or (5) affixing the notice to the inside of the apartment's main entry door. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other Lease Contract obligations. After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due; the filing

or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages; past or future rent or other sums; or to continue with eviction proceedings.

**Acceleration.** All monthly rent for the rest of the Lease Contract term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the Lease Contract term or renewal period ends; *and* (2) you've not paid all rent for the entire Lease Contract term or renewal period. Such conduct is considered a default for which we need not give you notice. Remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us (subject to our mitigation duties) for all rent for the full term of the previously signed Lease Contract of a new Lease Contract which can't occupy because of the holdover; and (4) at our option, we may extend the Lease Contract term–for up to one month from the date of notice of Lease Contract extension–by delivering written notice to you or your apartment while you continue to hold over.

**Other Remedies.** If your rent is delinquent and we give you 5 days' prior written notice, we may terminate electricity that we've furnished at our expense, unless government regulations provide otherwise. We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts or concessions agreed to in writing, in addition to other sums due. Upon your default, we have all other legal remedies, including Lease Contract termination and statutory lockout under Section 92.0081 of the Property Code. Unless a party is seeking exemplary, punitive, sentimental, or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs. We may recover attorney's fees in connection with enforcing our rights under this Lease Contract. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

**Mitigation of Damages.** If you move out early, you will be subject to paragraph 11 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

0705200603450 6