## ...al Clauses

**33. MISCELLANEOUS.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission by us will be considered a waiver of our rights or of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter, or fax that was given, as well as any fax transmittal verification. Fax signatures are binding. All notices must be signed. Notices may not be given by email.

Exercising one remedy won't constitute an election or waiver of other remedies. Insurance subrogation is waived by all parties. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the apartment is located.

We may deactivate or not install keyless bolting devices on your doors if: (1) you or an occupant in the dwelling is over 55 or disabled, and (2) the requirements of Section 92.153(e) or (f) of the Property Code are satisfied.

Cable channels that are provided may be changed during ... Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting.

Residents may have rights under Texas law to terminate the lease in certain situations involving family violence or a military deployment or transfer.

**34. PAYMENTS.** Payment of all sums is an independent covenant. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 or utility payments first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**35. TAA MEMBERSHIP.** We represent that, at the time of signing this Lease Contract or a Lease Contract Renewal Form: (1) we; (2) the management company that represents us; or (3) any locator service that procured you is a member in good standing of both the Texas Apartment Association and the affiliated local apartment association for the area where the apartment is located. The member is either an owner/ management company member or an associate member doing business as a locator service (whose name and address is disclosed on page 6). If not, the following applies: (1) this Lease Contract is voidable at your option and is unenforceable by us (except for property damages); (2) we may not recover past or future rent or other charges; and (3) we will be in violation of the Texas Penal Code and the Texas Deceptive Trade Practices Act. The above remedies also apply if both of the following occur: (1) the Lease Contract is automatically renewed on a month-to-month basis two or more times after membership in TAA and the local association has lapsed; and (2) neither the owner nor the management company is a member of TAA and the local association at the time of the third automatic renewal. A signed affidavit from the local affiliated apartment association which attests to non-membership when the Lease Contract or renewal was signed will be conclusive evidence of non-membership. The Lease Contract is voidable at your option if the Lease Contract or any lease addendum (that is a copyrighted TAA form) fails to show at the bottom of each page the names of all original residents listed in paragraph 1, or contains the same form identification code as any other resident's Lease Contract or lease addendum; or if your TAA Rental Application contains the same form identification code as any other resident's Rental Application. Governmental entities may use TAA forms if TAA agrees in writing.

## Security Guidelines for Residents

**36. SECURITY GUIDELINES.** We care about your safety and that of other occupants and guests. *No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.*

Inform all other occupants in your dwelling, including any children you may have, about these guidelines. We recommend that all residents and occupants use common sense and follow crime prevention tips, such as those listed below:

- In case of emergency, call 911. Always report emergencies to authorities first and then contact the management.

- Report any suspicious activity to the police first, and then follow up with a written notice to us.

- Know your neighbors. Watching out for each other is one of the best defenses against crime.

- Always be aware of your surroundings and avoid areas that are not well-traveled or well-lit.

- Keep your keys handy at all times when walking to your car or home.

- Do not go inside if you arrive home and find your door open. Call the police from another location and ask them to meet you before entering.

- Make sure door locks, window latches and sliding glass doors are properly secured at all times.

- Use the keyless deadbolt in your unit when you are at home.

- Don't put your name or address on your key ring or hide extra keys in obvious places, like under a flower pot. If you lose a key or have concerns about key safety, we will rekey your locks at your expense, in accordance with paragraph 9 of the Lease Contract.

- Check the door viewer before answering the door. Don't open the door if you don't know the person or have any doubts. Children who are old enough to take care of themselves should never let anyone inside when home without an adult.

- Regularly check your security devices and smoke detector to make sure they are working properly. Smoke detector batteries should be tested monthly and replaced at least twice a year.

- Immediately report in writing (dated and signed) to us any needed repairs of security devices, doors, windows, smoke detectors, as well as any other malfunctioning safety devices on the property, such as broken access gates, burned out exterior lights, etc.

- If your doors or windows are not secure due to a malfunction or break-in, stay with a friend or neighbor until the problem is fixed.

- When you leave home, make sure someone knows where you're going and when you plan to be back.

- Lock your doors and leave a radio or TV playing softly while you're gone. Close curtains, blinds and window shades at night.

- While gone for an extended period, secure your home and use lamp timers. Also stop all deliveries (such as newspaper and mail) or have these items picked up daily by a friend.

- Know at least two exit routes from your home, if possible.

- Don't give entry keys, codes or gate access cards to anyone.

- Always lock the doors on your car, even while driving. Take the keys and remove or hide any valuables. Park your vehicle in a well-lit area.

- Check the backseat before getting into your car. Be careful stopping at gas stations or automatic-teller machines at night—or anytime when you suspect danger.

There are many other crime prevention tips readily available from police departments and others.

## When Moving Out

**37. MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 22) except under the military clause (paragraph 23). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

- We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3 or special provisions—even if the Lease Contract has become a month-to-month lease. If a move-out notice is received on the first, it will suffice for move-out on the last day of the month of intended move-out, provided that all other requirements below are met.

- The move-out date in your notice (check one): ☐ must be the last day of the month; or ☒ may be the exact day designated in your notice. If neither is checked, the second applies.

- Your move-out notice must be in writing. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

- Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

- If we require you to give us more than 30 days written notice to move out before the end of the lease term, we will give you a written reminder not less than 5 days nor more than 90 days before your deadline for giving us your written move-out notice.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice—unless you are in default.

0705200603450B

Thomas Retzlaff

Your Initials: _____ Initials of Our Representative: _JK_

Apartment Lease Contract    © 2005, Texas Apartment Association, Inc.    Page 5 of 6

**38.** **MOVE-OUT PROCEDURES.** The move-out date can't be ... unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under paragraphs 11 and 32. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must surrender or abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**39.** **CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges--including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

**40.** **MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**41.** **SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector batteries at any time; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under paragraph 13; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-

related charges under paragraphs 6 and 27; government fines against us for violation (by you, your occupants, or guests, or local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for our time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract.

You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 if you fail to return them on or before your actual move-out date; (2) accelerated rent if you have violated paragraph 32; and (3) a reletting fee if you have violated paragraph 11.

**42.** **DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 30 days after surrender or abandonment, unless statutes provide otherwise.

You have **surrendered** the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid--whichever date occurs first.

You have **abandoned** the apartment when all of the following have occurred: (1) everybody appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) you've been in default for non-payment of rent for 5 consecutive days, or water, gas, or electric service for the apartment not connected in our name has been terminated or transferred; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned.   An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, or judicial eviction ends your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13), but do not affect our mitigation obligations (paragraph 32).

## Signatures, Originals and Attachments

**43.** **ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, each with original signatures--one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

☐ Access Gate Addendum
☐ Additional Special Provisions
☐ Animal Addendum
☐ Apt. Rules or Community Policies
☐ Asbestos Addendum (if asbestos is present)
☐ Early Termination Addendum
☐ Enclosed Garage, Carport or Storage Unit Addendum
☒ Inventory & Condition Form
☐ Intrusion Alarm Addendum
☐ Lead Hazard Information and Disclosure Addendum
☐ Lease Contract Guaranty (_____ guaranties, if more than one)
☐ Legal Description of Unit (if rental term longer than one year)
☐ Military SCRA Addendum
☒ Mold Information and Prevention Addendum
☐ Move-Out Cleaning Instructions
☐ Notice of Intent to Move Out Form
☐ Parking Permit or Sticker (quantity: _____ )
☐ Rent Concession Addendum
☐ Repair or Service Request Form
☒ Satellite Dish or Antenna Addendum
☐ TCEQ Tenant Guide to Water Allocation
☐ Utility Allocation Addendum for: ☐ electricity ☐ water ☐ gas
     ☐ central system costs  ☐ trash removal  ☐ cable TV
☒ Utility Submetering Addendum for: ☐ electricity ☒ water ☐ gas
☐ Other _____
☐ Other _____

*Name and address of locator service (if applicable)*

_____
_____
_____

Thomas Retzlaff
The San Miguel

**You are legally bound by this document.**
**Please read it carefully.**

Before submitting a rental application
or signing a Lease Contract, you may take a copy
of these documents to review and/or consult an attorney.

Additional provisions or changes may be made
in the Lease Contract if agreed to in writing by all parties.

You are entitled to receive an original of this Lease Contract
after it is fully signed.  Keep it in a safe place.

*Resident or Residents (all sign below)*

_____  5 Jul 06
                           Date signed

_____
                           Date signed

_____
                           Date signed

_____
                           Date signed

*Owner or Owner's Representative (signing on behalf of owner)*

_____

*Address and phone number of owner's representative for notice purposes*

5202 TEXANA

SAN ANTONIO, TX 78249

(210) 641-8200

*Date form is filled out (same as on top of page 1)*  07/05/2006





**TEXAS APARTMENT ASSOCIATION**

### Water/Wastewater Submetering Addendum

**MEMBER**

**1. REASON FOR SUBMETERING.** When water and wastewater bills are paid 100 percent by the property owner, residents have no incentive to conserve water. This results in a waste of our state's natural resources and adds to the overhead of the property--and that usually means higher rents.

*Submetering of water bills saves money for residents because it encourages them to conserve water and wastewater and enables them to economically benefit by their individual conservation efforts. We as owners also have incentive to conserve because we are required by law to pay a portion of the total water bill(s) for the entire apartment community.*

**2. TCEQ.** Water conservation by submeter billing is encouraged by the Texas Commission on Environmental Quality (TCEQ). Submeter billing is regulated by TCEQ rules, and a TCEQ summary of the rules (called a tenant guide) is attached to this addendum. This addendum complies with those rules.

**3. MUTUAL CONSERVATION EFFORTS.** We agree to use our best efforts to repair any water leaks inside or outside your apartment no later than 7 days after learning of them. You agree to use your best efforts to follow the water conservation suggestions listed below.

**4. SUBMETER BILLING PROCEDURES.** Your monthly rent under the TAA Lease Contract does *not* include a charge for water and wastewater. Instead, you will be receiving a separate bill from us each month for such utilities. We will send you a monthly bill for submetered water/wastewater, as follows:

- Your monthly water/wastewater bill will conform to all applicable TCEQ rules.

- No administrative or other fees will be added to your bill unless expressly allowed by TCEQ rules. No other amounts will be included in the bill except your unpaid balances and any late fees (if incurred by you). If we fail to pay our mastermeter bill to the utility company on time and incur penalties or interest, no portion of such amounts will be included in your bill.

- We will calculate your submetered share of the mastermetered water bill according to TCEQ rules, Sections 291.124(a), (b), (c), and (d).

- We will bill you monthly for your submetered water consumption from approximately the _____ day of the month to the _____ day of the month, the latter being our scheduled submeter reading date. Your bill will be calculated in accordance with TCEQ rules and this Addendum and will be prorated for the first and last months you live in the unit.

- As required under TCEQ rules, you are notified that the average monthly bill for all dwelling units in the previous calendar year is $ _____ per unit, varying from $ _____ to $ _____ for the lowest to highest month's bills for any unit in the apartment community for this period, if such information is available. This information may or may not be relevant since the above amounts do not reflect future changes in utility company water rates, weather variations, future total water consumption, changes in water consumption habits of residents, or other unpredictable factors.

- During regular weekday office hours, you may examine: (1) our water/wastewater bills from the utility company; (2) our calculations of your monthly submeter bill; and (3) any other information available to you under TCEQ rules. Please give us reasonable advance notice to gather the data. Any disputes relating to the computation of your bill will be between you and us.

**5. YOUR PAYMENT DUE DATE.** Payment of your submeter water/wastewater bill is due 16 days after the date it is postmarked or hand delivered to your apartment. You agree to mail or deliver payment to the place indicated on your bill so that payment is received no later than the due date. You will pay a late charge of 5 percent of your water/wastewater bill if we do not receive timely payment.

**Resident or Residents**
*(All residents must sign here)*

_____

_____

_____

**Owner or Owner's Representative**
*(Signs here)*

**Date of Lease Contract**          **Apt. No.**

July 5, 2006                          917

On next page: TCEQ Tenant Guide for Submetered Water or Wastewater Service.

*You are entitled to receive an original of this Water/Wastewater Submetering Addendum after it is fully signed. Keep it in a safe place.*

### A CHECKLIST OF WATER CONSERVATION IDEAS FOR YOUR DWELLING

**In the bathroom...**
- Never use the toilet to dispose of cleansing tissues, dental floss, cigarette butts or other trash.
- When brushing your teeth, turn off the water until you need to rinse your mouth.
- When shaving, fill the sink with hot water instead of letting the faucet run.
- Take a shorter shower. Showers may use up to 50 percent of interior water consumption.
- Take a shower instead of filling the tub and taking a bath.
- If you take a tub bath, reduce the water level by one or two inches.
- Shampoo your hair in the shower.
- Test toilets for leaks. Add a few drops of food coloring to the tank, but do not flush. Watch to see if the coloring appears in the bowl within a few minutes. If it does, the fixture needs adjustment or repair. A slow drip can waste as much as 170 gallons a day or 5,000 gallons per month. Report all leaks to management.
- Don't leave water running while cleaning bathroom fixtures..

**In the kitchen...**
- Run your dishwasher only when you have a full load.
- If you wash dishes by hand, don't leave the water running for washing or rinsing. Try filling the sink instead.
- Use your sink disposal sparingly, and never for just a few scraps.
- Keep a container of drinking water in the refrigerator.
- When cleaning vegetables, use a pan of cold water rather than letting the faucet run.
- For cooking most food, use only a little water and a lid on the pot.
- Report all leaks to management.

**When doing the laundry...**
- Only wash full loads of laundry or adjust the water level to match the size of the load (if this is an option).
- Use cold water as often as possible to save energy and to conserve the hot water for uses which cold water cannot serve.

Thomas Retzlaff

07052006034514

TAA Official Statewide Form 03-EE, Revised October, 2003
Copyright 2003, Texas Apartment Association, Inc. 



TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

# Tenant Guide to Submetered Water or Wastewater Service

## What is submetered utility service?

Under a lease agreement, this property will bill you for water and perhaps wastewater using a method called *submetering*. The owner receives water and wastewater service from the local utility, and has installed a *submeter* for each unit to measure each tenant's water use. At the time you discuss a rental agreement, the property owner must provide you with a free copy of either the rules on utility submetering, or a copy of this summary of the rules that has been prepared by the Texas Commission on Environmental Quality (TCEQ).

## How does submetering work?

Submetered facilities have individual *submeters* that are installed and owned by the property owner, not the local utility. The owner or a billing company reads your submeter and determines your actual water consumption to calculate your bill.

## Is this practice legal?

Yes, Texas law allows owners to bill tenants for water and wastewater service. Under this law, the TCEQ has adopted rules designed to provide safeguards for you, the tenant. The rules require the property owner to provide you with specific information about your bills and to include disclosures about their billing practices in your rental agreement. It is important for you to be familiar with these requirements, because any billing disputes that arise must be resolved by you and the property owner, usually by working with the on-site manager.

## What should my rental agreement include?

Your rental agreement, lease, or a lease addendum, should disclose the following:

▼ You will be billed for submetered service.
▼ You will be billed for water and/or wastewater, and perhaps for hot water from a central system.
▼ You have the right to receive information from the owner to verify your utility bill.
▼ Disputes about the calculation of your bill or the accuracy of a submeter are between you and the property owner.
▼ The average monthly water/wastewater bill for all dwelling units in the previous calendar year, and the highest and lowest bill in that year.
▼ The date submeters are usually read.
▼ The date bills are usually issued.
▼ The date bills are usually due.
▼ The number of days it will take to repair a leak in your dwelling unit, after you have reported it in writing.
▼ The number of days it will take to repair a leak in an unmetered common area that you report in writing.

## How will my bill be determined?

Under submetering, the property owner or a billing company uses your actual water consumption, as read on your submeter, and multiplies it by either: the owner's cost per gallon, liter, or cubic foot for water, as computed from the utility's bill; or the utility's charge per gallon, liter, or cubic foot for water, as shown on the utility's rate schedule. The owner may also calculate wastewater charges the same way—again using your water consumption, since wastewater is not metered. A manufactured home rental community billing on a submetered basis may also assess a *service charge*. This charge must not exceed *9 percent* of the tenant's charge for water service. If you have questions about your bill, ask your property owner to explain submetering and how the bill was calculated (see "What records must the owner provide" in this publication).

## What utility charges can be passed through to tenants?

Submetered bills for water and wastewater may only include utility charges for water, wastewater, and surcharges directly related to those services. Tenants may not be charged for fees the utility has billed the owner for a deposit, disconnect, reconnect, late payment, or other similar fee. Texas law does not allow property owners to profit from submetered billing by adding extra fees or hidden charges to water and wastewater bills.

## What records must be made available to you?

TCEQ rules require property owners to make the following records available to you for inspection at the manager's office during normal business hours. The owner or manager may ask you to submit a written request to view this information. Records routinely kept at the on-site manager's office should be made available within *three days*.

Records routinely kept elsewhere should be made available within *15 days* of receiving your written request. If there is no on-site manager's office, the owner must make copies of requested information available at your dwelling unit, at a time agreed to by you, within *30 days* of receiving your written request.

Information that must be made available to you includes:
▼ the statute that allows owners to bill tenants for water and wastewater service (Texas Water Code, Chapter 13, Subchapter M);
▼ TCEQ rules that regulate this practice (Title 30, Texas Administrative Code, Chapter 291, Subchapter H);
▼ rates charged to the property by the utility;
▼ bills from the utility to the property;
▼ total amount billed to tenants each month for water/wastewater;

▼ total amount collected from tenants each month for water/wastewater;
▼ all submeter readings;
▼ all submeter test results;
▼ calculation of the average cost per gallon, liter, or cubic foot;
▼ chart showing how the utility's unit of measure is converted to the unit of measure used by the tenant's submeter (if applicable);
▼ any other information you would need to calculate and verify your water/wastewater bill; and
▼ conservation tips.

## What information must be included on my submetered bill?

▼ Tenant's name and address.
▼ Amount due for dwelling unit base charge or customer service charge, or both, if applicable.
▼ Amount due for water and/or wastewater.
▼ Due date.
▼ Number of gallons, liters, or cubic feet you used.
▼ Cost per gallon, liter, or cubic foot for each service provided.
▼ Dates and readings of the submeter at the beginning and end of the period for which the bill is rendered.
▼ Name of the retail utility and a statement that the bill is not from the retail public utility.
▼ Name of the billing company, if applicable.
▼ Name, address, and telephone number of the party to whom payment is to be made.
▼ Name or title, address, and phone number of the company or person to be contacted about a dispute.
▼ Amount due for a service charge assessed by a manufactured home rental community.

## How do I dispute a bill?

You are encouraged to file billing disputes in *writing* with the person identified on your bill to contact about disputes—usually the owner, the on-site manager, or a billing company. The owner or designated person must then investigate the dispute and report the results of the investigation to you in writing. The investigation and report must be completed within *30 days* from the date you provide written notification. If you find that a TCEQ rule has been violated, please document your findings and contact the TCEQ at the address at the end of this publication.

## When is my bill due?

Your bill is due on receipt. Your payment will be considered late if it is not received within *16 days* after the bill is mailed or hand-delivered to you. The owner may then issue a *disconnection notice* indicating your utility service will be disconnected if payment is not received.

## Can my utility service be disconnected for nonpayment?

Yes, your service can be disconnected for nonpayment. The owner must first give you a disconnection notice at least *10 days* before the date you are scheduled to be disconnected.

## Can the owner change the way I am billed?

No, not unless:
▼ the owner has received TCEQ approval to bill on an *allocated*, rather than on a submetered basis (for more information on allocated utility bills, see TCEQ publication, *Tenant Guide to Allocated Water or Wastewater Service*);
▼ the owner has given you notice of the proposed change at least *35 days* prior to implementing the new method;
▼ your existing lease has expired, or you are willing to sign a new lease before the current lease expires; and
▼ you have agreed to the change by signing a lease or other written agreement.

## Who is responsible for the submeter?

The property owner is responsible for installing, maintaining, and testing all submeters. If you ask for a meter test in writing, the owner must do one of two things at no charge to you: either provide evidence that the meter was calibrated or tested and shown to be accurate within the preceding 24 months, in accord with standards established by the American Water Works Association; or remove and test your meter and promptly advise you of the test results. If you request additional testing, you may be billed up to $25 for the actual testing cost.

**Note: This guide summarizes only some of the TCEQ rules regarding submetered billing. A property owner must be familiar with, and comply with, all applicable state laws and rules. Tenants are encouraged to refer to these sources for additional, detailed information.**

Violations of TCEQ rules should be documented in writing and sent to: TCEQ; Outreach & Information Assistance Team; Water Information & Assistance Section, MC-141; P.O. Box 13087; Austin, TX 78711-3087. The Outreach & Information Assistance Team may also be reached by calling 512/ 239-6100. For more information, see the TCEQ Web site at www.tceq. state.tx.us.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

The TCEQ is an equal opportunity/affirmative action employer. The agency does not allow discrimination on the basis of race, color, religion, national origin, sex, disability, age, sexual orientation or veteran status. In compliance with the Americans with Disabilities Act, this document may be requested in alternate formats by contacting the TCEQ at (512)239-0028, Fax 239-4488 or 1-800-RELAY-TX(TDD), or by writing P.O. Box 13087, Austin, TX 78711-3087.

Thomas Retzlaff

07052006034516



**TEXAS APARTMENT ASSOCIATION**
M E M B E R

## Security Guidelines for Residents

**MEMBER**

We care about your safety and that of other occupants and guests. *No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.*

Inform all other occupants in your dwelling, including any children you may have, about these guidelines.   We recommend that all residents and occupants use common sense and follow crime prevention tips, such as those listed below:

- In case of emergency, call 911.   Always report emergencies to authorities first and then contact the management.

- Report any suspicious activity to the police first, and then follow up with a written notice to us.

- Know your neighbors.  Watching out for each other is one of the best defenses against crime.

- Always be aware of your surroundings and avoid areas that are not well-traveled or well-lit.

- Keep your keys handy at all times when walking to your car or home.

- Do not go inside if you arrive home and find your door open.  Call the police from another location and ask them to meet you before entering.

- Make sure door locks, window latches and sliding glass doors are properly secured at all times.

- Use the keyless deadbolt in your unit when you are at home.

- Don't put your name or address on your key ring or hide extra keys in obvious places, like under a flower pot.  If you lose a key or have concerns about key safety, we will rekey your locks at your expense, in accordance with paragraph 9 of the Lease Contract.

- Check the door viewer before answering the door. Don't open the door if you don't know the person or have any doubts.  Children who are old enough to take care of themselves should never let anyone inside when home without an adult.

- Regularly check your security devices and smoke detector to make sure they are working properly. Smoke detector batteries should be tested monthly and replaced at least twice a year.

- Immediately report in writing (dated and signed) to us any needed repairs of security devices, doors, windows, smoke detectors, as well as any other malfunctioning safety devices on the property, such as broken access gates, burned out exterior lights, etc.

- If your doors or windows are not secure due to a malfunction or break-in, stay with a friend or neighbor until the problem is fixed.

- When you leave home, make sure someone knows where you're going and when you plan to be back.

- Lock your doors and leave a radio or TV playing softly while you're gone.  Close curtains, blinds and window shades at night.

- While gone for an extended period, secure your home and use lamp timers.  Also stop all deliveries (such as newspaper and mail) or have these items picked up daily by a friend.

- Know at least two exit routes from your home, if possible.

- Don't give entry keys, codes or gate access cards to anyone.

- Always lock the doors on your car, even while driving. Take the keys and remove or hide any valuables.  Park your vehicle in a well-lit area.

- Check the backseat before getting into your car.  Be careful stopping at gas stations or automatic-teller machines at night--or anytime when you suspect danger.

There are many other crime prevention tips readily available from police departments and others.

### Acknowledgment of Receipt of Security Guidelines for Residents

Apartment name and unit, or dwelling address   MBS - The San Miguel, 5202 Texana Drive #917

Initials of Owner's Representative   JK   Date  7/7/06   Initials of Resident(s)  JM   Date  5Ju106

07052006034518

Thomas Retzlaff

TAA Official Statewide Form 05-M, Revised October, 2005
Copyright 2005, Texas Apartment Association, Inc.





**TEXAS APARTMENT ASSOCIATION**
M E M B E R

**Mold Information and Prevention Addendum**



TAA
**MEMBER**

> *Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize any mold growth in your dwelling. That is why this addendum contains important information for you, and responsibilities for both you and us.*

**1. ADDENDUM.** This is an addendum to the Lease Contract executed by you, the resident(s), on the dwelling you have agreed to rent. That dwelling is:

Apt. #  **917**  at **MBS – The San Miguel**

*(name of apartments)*

or other dwelling located at **5202 Texana Drive**

*(street address of house, duplex, etc.)*

City/State where dwelling is located
**San Antonio, TX 78249**

**2. ABOUT MOLD.** Mold is found virtually everywhere in our environment--both indoors and outdoors and in both new and old structures. Molds are naturally occurring microscopic organisms which reproduce by spores and have existed practically from the beginning of time. All of us have lived with mold spores all our lives. Without molds we would all be struggling with large amounts of dead organic matter.

Mold breaks down organic matter in the environment and uses the end product for its food. Mold spores (like plant pollen) spread through the air and are commonly transported by shoes, clothing and other materials. When excess moisture is present inside a dwelling, mold can grow. There is conflicting scientific evidence as to what constitutes a sufficient accumulation of mold which could lead to adverse health effects. Nonetheless, appropriate precautions need to be taken.

**3. PREVENTING MOLD BEGINS WITH YOU.** In order to minimize the potential for mold growth in your dwelling, you must do the following:

- Keep your dwelling clean--particularly the kitchen, the bathroom(s), carpets and floors. Regular vacuuming, mopping and using a household cleaner to clean hard surfaces is important to remove the household dirt and debris that harbor mold or food for mold. Immediately throw away moldy food.

- Remove visible moisture accumulation on windows, walls, ceilings, floors and other surfaces as soon as reasonably possible. Look for leaks in washing machine hoses and discharge lines--especially if the leak is large enough for water to infiltrate nearby walls. Turn on any exhaust fans in the bathroom and kitchen *before* you start showering or cooking with open pots. When showering, be sure to keep the shower curtain *inside* the tub or fully close the shower doors. Also, the experts recommend that after taking a shower or bath, you: (1) wipe moisture off of shower walls, shower doors, the bathtub and the bathroom floor; (2) leave the bathroom door open until all moisture on the mirrors and bathroom walls and tile surfaces has dissipated; and (3) hang up your towels and bath mats so they will completely dry out.

- Promptly notify us in writing about any air conditioning or heating system problems you discover. Follow our rules, if any, regarding replacement of air filters. Also, it is recommended that you periodically open windows and doors on days when the outdoor weather is dry (i.e., humidity is below 50 percent) to help humid areas of your dwelling dry out.

- Promptly notify us in writing about any signs of water leaks, water infiltration or mold. We will respond in accordance with state law and the Lease Contract to repair or remedy the situation, as necessary.

**4. IN ORDER TO AVOID MOLD GROWTH,** it is important to prevent excessive moisture buildup in your dwelling. Failure to promptly pay attention to leaks and moisture that might accumulate on dwelling surfaces or that might get inside walls or ceilings can encourage mold growth. Prolonged moisture can result from a wide variety of sources, such as:

- rainwater leaking from roofs, windows, doors and outside walls, as well as flood waters rising above floor level;

- overflows from showers, bathtubs, toilets, lavatories, sinks, washing machines, dehumidifiers, refrigerator or A/C drip pans or clogged up A/C condensation lines;

- leaks from plumbing lines or fixtures, and leaks into walls from bad or missing grouting/caulking around showers, tubs or sinks;

- washing machine hose leaks, plant watering overflows, pet urine, cooking spills, beverage spills and steam from excessive open-pot cooking;

- leaks from clothes dryer discharge vents (which can put lots of moisture into the air); and

- insufficient drying of carpets, carpet pads, shower walls and bathroom floors.

**5. IF SMALL AREAS OF MOLD HAVE ALREADY OCCURRED ON** *NON-POROUS* **SURFACES** (such as ceramic tile, formica, vinyl flooring, metal, wood or plastic), the federal Environmental Protection Agency (EPA) recommends that you first clean the areas with soap (or detergent) and water, let the surface dry, and then within 24 hours apply a pre-mixed, spray-on-type household biocide, such as Lysol Disinfectant®, Pine-Sol Disinfectant® (original pine-scented), Tilex Mildew Remover® or Clorox Cleanup®. (Note: Only a few of the common household cleaners will actually kill mold.) Tilex® and Clorox® contain bleach which can discolor or stain. **Be sure to follow the instructions on the container.** Applying biocides without first cleaning away the dirt and oils from the surface is like painting over old paint without first cleaning and preparing the surface.

Always clean and apply a biocide to an area 5 or 6 times larger than any visible mold because mold may be adjacent in quantities not yet visible to the naked eye. A vacuum cleaner with a high-efficiency particulate air (HEPA) filter can be used to help remove non-visible mold products from *porous* items, such as fibers in sofas, chairs, drapes and carpets--provided the fibers are completely dry. Machine washing or dry cleaning will remove mold from clothes.

**6. DO NOT CLEAN OR APPLY BIOCIDES TO:** (1) visible mold on *porous* surfaces, such as sheetrock walls or ceilings, or (2) *large areas* of visible mold on *non-porous* surfaces. Instead, notify us in writing, and we will take appropriate action in compliance with Section 92.051 et seq of the Texas Property Code, subject to the special exceptions for natural disasters.

**7. COMPLIANCE.** Complying with this addendum will help prevent mold growth in your dwelling, and both you and we will be able to respond correctly if problems develop that could lead to mold growth. If you have questions regarding this addendum, please contact us at the management office or at the phone number shown in your Lease Contract.

**If you fail to comply with this Addendum, you can be held responsible for property damage to the dwelling and any health problems that may result. We can't fix problems in your dwelling unless we know about them.**

**Resident or Residents**
*(All residents must sign here)*

**Owner or Owner's Representative**
*(Signs here)*

Date of Lease Contract
**July 5, 2006**

*You are entitled to receive an original of this Mold Information and Prevention Addendum after it is fully signed. Keep it in a safe place.*

TAA Official Statewide Form 01-FF, June, 2001.
Copyright 2001, Texas Apartment Association, Inc.

0705200603 4520
Thomas Retzlaff

# LEASE ADDENDUM
## FOR SATELLITE DISH OR ANTENNA

Under a Federal Communications Commission (FCC) order, you as our resident have a right to install a transmitting or receiving satellite dish or antenna on the leased premises, subject to FCC limitations. We as rental housing owner are allowed to impose reasonable restrictions relating to such installation. You are required to comply with these restrictions as a condition of installing such equipment. This addendum contains the restrictions that you and we agree to follow.

1. **Addendum.** This is an addendum to the TAA Lease Contract for Apt. No. __917__ in the __MBS - The San Miguel__

Apartments in _____ San Antonio _____ , Texas
OR
the house, duplex, etc. located at (street address) _____
_____ in _____ , Texas.

2. **Number and size.** You may install _____ satellite dish(es) or antenna(s) on the leased premises. A satellite dish may not exceed one meter (3.3 feet) in diameter. Antennas that only transmit signals or that are not covered by 47 CFR § 1.4000 are prohibited.

3. **Location.** Your satellite dish or antenna must be located: (1) inside your dwelling; or (2) in an area outside your dwelling such as a balcony, patio, yard, etc. of which you have exclusive use under your lease. Installation is not permitted on any parking area, roof, exterior wall, window, window sill, fence or common area, or in an area that other residents are allowed to use. A satellite dish or antenna may not protrude beyond the vertical and horizontal space that is leased to you for your exclusive use.

4. **Safety and non-interference.** Your installation: (1) must comply with all applicable ordinances and laws and all reasonable safety standards; (2) may not interfere with our cable, telephone or electrical systems or those of neighboring properties; (3) may not be connected to our telecommunication systems; and (4) may not be connected to our electrical system except by plugging into a 110-volt duplex receptacle. If the satellite dish or antenna is placed in a permitted outside area, it must be safely secured by one of three methods: (1) securely attaching it to a portable, heavy object such as a small slab of concrete; (2) clamping it to a part of the building's exterior that lies within your leased premises (such as a balcony or patio railing); or (3) any other method approved by us in writing. No other methods are allowed. We may require reasonable screening of the satellite dish or antenna by plants, etc., so long as it does not impair reception.

5. **Signal transmission from exterior dish or antenna to interior of dwelling.** Under the FCC order, you may not damage or alter the leased premises and may not drill holes through outside walls, door jams, window sills, etc. If your satellite dish or antenna is installed outside your dwelling (on a balcony, patio, etc.), the signals received by it may be transmitted to the interior of your dwelling only by the following methods: (1) running a "flat" cable under a door jam or window sill in a manner that does not physically alter the premises and does not interfere with proper operation of the door or window; (2) running a traditional or flat cable through a pre-existing hole in the wall (that will not need to be enlarged to accommodate the cable); (3) connecting cables "through a window pane," similar to how an external car antenna for a cellular phone can be connected to inside wiring by a device glued to either side of the window--without drilling a hole through the window; (4) wireless transmission of the signal from the satellite dish or antenna to a device inside the dwelling; or (5) any other method approved by us in writing.

6. **Safety in installation.** In order to assure safety, the strength and type of materials used for installation must be approved by us. Installation must be done by a qualified person or company approved by us. Our approval will not be unreasonably withheld. An installer provided by the seller of the satellite dish or antenna is presumed to be qualified.

7. **Maintenance.** You will have the sole responsibility for maintaining your satellite dish, antenna and all related equipment.

8. **Removal and damages.** You must remove the satellite dish or antenna and all related equipment when you move out of the dwelling. In accordance with TAA Lease Contract paragraph 41, you must pay for any damages and for the cost of repairs or repainting caused by negligence, carelessness, accident or abuse which may be reasonably necessary to restore the leased premises to its condition prior to the installation of your satellite dish, antenna or related equipment. You will not be responsible for normal wear.

9. **Liability insurance and indemnity.** You must take full responsibility for the satellite dish, antenna and related equipment. If the dish or antenna is installed at a height or in some other way that could result in injury to others if it becomes unattached and falls, you must provide us with evidence of liability insurance to protect us against claims of personal injury and property damage to others, related to your satellite dish, antenna and related equipment. The insurance coverage must be _____ , which is an amount reasonably determined by us to accomplish that purpose. Factors affecting the amount of insurance include height of installation above ground level, potential wind velocities, risk of the dish/antenna becoming unattached and falling on someone, etc. You agree to hold us harmless and indemnify us against any of the above claims by others.

10. **Security deposit.** Your security deposit (in paragraph 4 of your Lease Contract) is increased by an additional reasonable sum of $ _____ , (check one) ☐ not effective until installation or ☐ due within _____ days of installation, to help protect us against possible repair costs, damages, or failure to remove the satellite dish, antenna and related equipment at time of move-out. Factors affecting any security deposit may vary, depending on: (1) how the dish or antenna is attached (nails, screws, lag bolts drilled into walls); (2) whether holes were permitted to be drilled through walls for the cable between the satellite dish and the TV; and (3) the difficulty and cost of repair or restoration after removal, etc.

11. **When you may begin installation.** You may start installation of your satellite dish, antenna or related equipment only after you have: (1) signed this addendum; (2) provided us with written evidence of the liability insurance referred to in paragraph 9 of this addendum; (3) paid us the additional security deposit, if applicable, in paragraph 10; and (4) received our written approval, which may not be unreasonably withheld, of the installation materials and the person or company that will do the installation.

12. **Miscellaneous.** If additional satellite dishes or antennas are desired, an additional lease addendum must be executed.

**Resident or Residents**
*[All residents must sign here]*

_____
_____
_____
_____

**Owner or Owner's Representative**
*[signs here]*

_____

**Date of Lease Contract**
__July 5, 2006__

Thomas Retzlaff

## LEASE ADDENDUM REGARDING LIMITED WAIVER AND MODIFICATION OF RIGHTS UNDER U.S. SERVICEMEMBERS CIVIL RELIEF ACT

1. **Addendum.** This is an addendum to the TAA Lease Contract for Apt. No. __917__ in the __MBS - The San Miguel__

   Apartments in __San Antonio__, Texas. **OR** the house, duplex, etc. located at (street address) _____

   in _____, Texas.

   For purposes of this addendum, "you" means a servicemember as defined by the "U.S. Servicemembers Civil Relief Act" (SCRA).

2. **Reason for addendum.** Congress has enacted into law the "U.S. Servicemembers Civil Relief Act" (SCRA). This law, among other things, modifies the rights of military personnel to terminate a lease in certain cases and provides that military personnel may waive their rights under the SCRA in certain circumstances. This addendum clarifies your rights and our obligations in the event of a deployment. This addendum provides for a limited waiver of the terms of the SCRA. However, we agree to grant individuals covered by the SCRA and their spouses all of the rights described in this addendum.

3. **Waiver and modification of paragraph 23.** The language of paragraph 23 of the TAA Lease Contract is entirely replaced by the language of this addendum. A resident who is a servicemember on active military duty at the time of signing this Lease Contract and such resident's spouse waive for the purposes of this Lease Contract all rights under the SCRA, and shall instead have the rights and obligations set forth below.

4. **Military personnel right to terminate.** Except as provided in paragraphs 5 or 13 below, you or your spouse may terminate the Lease Contract if you enlist or are drafted or commissioned in the U.S. Armed Forces during the original or renewal Lease Contract term. You or your spouse also may terminate the Lease Contract if:

   (1) you are (i) a member of the U.S. Armed Forces or reserves on active duty *or* (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; *and*

   (2) you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, *or* (iii) are relieved or released from active duty.

   If you or your spouse terminates under this addendum, we must be furnished with a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or letter. Military permission for base housing does not constitute permanent change-of-station orders.

5. **Exception for termination upon deployment orders.** If you or your spouse are terminating the Lease Contract due to deployment orders, you or your spouse may terminate the Lease Contract only on the condition that during the remainder of the original or renewal Lease Contract term neither you nor your spouse will accept an assignment for or move into base housing, or move into other housing located within 30 miles of the dwelling unit described above. The foregoing exception does not apply if (1) you or your dependent move into housing owned or occupied by family or relatives of you or your dependent, or (2) you or your dependent move, wholly or partly, because of significant financial loss of income caused by your military service.

   If you or your spouse terminate the Lease Contract and violate this paragraph, the Lease Contract shall be deemed to have not been legally terminated and you and your spouse shall be in default under the Lease Contract. In that event, we will have all legal remedies, including those described in the Lease Contract, such as charging a reletting fee under paragraph 11 and accelerating rent under paragraph 32.

6. **Effect of housing allowance continuation.** The fact that the servicemember continues to receive a housing allowance for the servicemember's spouse and/or dependents after deployment does not affect the right of the servicemember or the servicemember's spouse to terminate unless otherwise stated in paragraph 13 of this addendum.

7. **Other co-residents.** A co-resident who is not a spouse of a servicemember may not terminate under this addendum. Your and your spouse's right to terminate the Lease Contract under this addendum only affect the Lease Contract as it applies to you and your spouse--other residents' rights and obligations under the Lease Contract remain unchanged.

8. **Termination date.** If you or your spouse terminates under this addendum, all rights and obligations of you and your spouse under the Lease Contract will be terminated 30 days after the date on which the next rental payment is due, with the exception of obligations arising before the termination date and lawful security deposit deductions.

9. **Representations.** Unless you state otherwise in paragraph 13 of this addendum, you represent when signing this addendum that: (1) you have not already received deployment or change-of-station orders; (2) you will not be retiring from the military during the Lease Contract term; and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 32 of the

Thomas Retzlaff

lease. You must immediately notify us when called to active duty or receive deployment or permanent change-of-station orders.

10. **Refunds upon termination.** We will refund your security deposit and other amounts paid in advance for any period after the effective termination date of the Lease Contract, less lawful deductions, within 30 days after the effective date of the termination of the Lease Contract.

11. **Statutory notice.** You may have special statutory rights to terminate the Lease Contract early in certain situations involving family violence or a military deployment or transfer.

12. **Other rights unchanged.** All other contractual rights and duties of both you and us under the Lease Contract remain unchanged.

13. **Additional provisions.** The following provisions will supercede any conflicting provisions of the Lease Contract and this addendum.

_____
_____
_____
_____

**Resident or Residents**
*[All residents must sign here]*

_____

_____

_____

_____

**Owner or Owner's Representative**
*[Signs here]*

_____

**Date of Lease Contract**

July 5, 2006
_____

Thomas Retzlaff

Page 2 of 2

**Pro Se Acknowledgement**

# 2006CI11334

## CAUSE NUMBER: _____

I have received, read and understand all of the Pro Se Hearing Guidelines. I agree to abide by these guidelines and understand that my failure to do so may result in adverse action against me, that I may be asked to leave the Courtroom, or that I may not receive the relief I am seeking.

If the opposing party signed a Waiver of Citation, it is NOT VALID UNLESS IT IS SIGNED <u>ON OR AFTER THE DAY</u> OF FILING FOR DIVORCE IN FRONT OF A NOTARY PUBLIC.  If I am filing for Divorce with children, or for a change of custody, I will take the COURT REQUIRED COURSE, Helping Children Cope with Divorce, **prior** to asking the court to enter a final order or Decree.  I understand that my divorce will not be granted without presenting the certificate of completion.

I understand that I may hire an attorney to represent me or, if I meet certain requirements, I may be entitled to free counsel.  By choosing to voluntarily represent myself, I am now proceeding Pro Se.  I will receive no special favors, assistance, or advice from the Judge, judicial staff, or clerks as they cannot and do not represent either party in the litigation.  I will be expected to comply with all relevant rules of procedural, evidentiary, and substantive law.  I understand that the filing and service fees are NOT REFUNDABLE under any circumstance.

_____                    25 Jul 06
**Signature of Pro Se Litigant**                          **Date**

FILED
DISTRICT CLERK
BEXAR CO. TEXAS

06 JUL 25 PM 12: 48

DEPUTY

BY _____

*Jacqueline Trinidad*

CERTIFIED COPY CERTIFICATE STATE OF TEXAS
MARGARET G. MONTEMAYOR, BEXAR COUNTY DISTRICT
CLERK, CERTIFY THAT THE FOREGOING IS A
TRUE AND CORRECT COPY OF THE ORIGINAL
RECORD FILED ON _____7-25-06_____
WITHESS MY OFFICIAL HAND AND SEAL OF OFFICE THIS

AUG 2 2 2006

MARGARET G. MONTEMAYOR
BEXAR COUNTY, TEXAS

By _____ DEPUTY

NO. 2006-CI-11334

| | | |
|---|---|---|
| THOMAS RETZLAFF, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 37TH JUDICIAL DISTRICT |
| BRENT WILSON, CHOICEPOINT | § | |
| SERVICES, INC., ROBERTH FAITH, | § | |
| STACEY HUNT, JOHN and/or JANE | § | |
| DOE, and GREYSTAR REAL ESTATE | § | |
| PARTNERS, LLC, | § | |
| | § | |
| Defendants. | | BEXAR COUNTY, TEXAS |

## DEFENDANT BRENT WILSON'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant Brent Wilson ("Defendant Wilson"), one of the defendants

herein, and in answer to Plaintiff's Original Petition and Requests for Disclosure, files this his

Original Answer and would show the Court as follows:

I.

Defendant Wilson denies each and every, all and singular, the allegations contained in

Plaintiff's Original Petition and Requests for Disclosure and demands strict proof thereof.

WHEREFORE, PREMISES CONSIDERED, Defendant Brent Wilson prays that

Plaintiff's claims in all things be denied, that judgment be entered on behalf of Defendant

Wilson, and that Defendant Wilson recover all relief, legal and equitable, to which Defendant

may be entitled.

Respectfully submitted,


*Robert T. Mowrey*  w/perm.
                        cdc
Robert T. Mowrey
State Bar No. 14607500
C. Don Clayton
State Bar No. 24027932
LOCKE LIDDELL & SAPP, LLP
2200 Ross Avenue
Suite 2200
Dallas, TX 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Telecopy)

ATTORNEYS FOR DEFENDANT
COUNTRYWIDE HOME LOANS, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Original Answer was served

on this the 17th day of August, 2006 on the following, via certified mail, return receipt

requested:

Thomas C. Retzlaff
P. O. Box 92
San Antonio, TX 78291-0092


*C. Don Clayton*

---

**DEFENDANT BRENT WILSON'S ORIGINAL ANSWER**                    **Page 2**

NO. 2006-CI-11334

| | | |
|---|---|---|
| THOMAS RETZLAFF, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 37TH JUDICIAL DISTRICT |
| BRENT WILSON, CHOICEPOINT | § | |
| SERVICES, INC., ROBERTH FAITH, | § | |
| STACEY HUNT, JOHN and/or JANE | § | |
| DOE, and GREYSTAR REAL ESTATE | § | |
| PARTNERS, LLC, | § | |
| | § | |
| Defendants. | | BEXAR COUNTY, TEXAS |

## DEFENDANT CHOICEPOINT SERVICES, INC.'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant Choicepoint Services, Inc. ("Defendant Choicepoint"), one of the defendants herein, and in answer to Plaintiff's Original Petition and Requests for Disclosure, files this its Original Answer and would show the Court as follows:

### I.

Defendant Choicepoint denies each and every, all and singular, the allegations contained in Plaintiff's Original Petition and Requests for Disclosure and demands strict proof thereof.

WHEREFORE, PREMISES CONSIDERED, Defendant Choicepoint Services, Inc. prays that Plaintiff's claims in all things be denied, that judgment be entered on behalf of Defendant Choicepoint, and that Defendant Choicepoint recover all relief, legal and equitable, to which Defendant may be entitled.

Respectfully submitted,

*Robert T. Mowrey* w/pem.
loc
Robert T. Mowrey
State Bar No. 14607500
C. Don Clayton
State Bar No. 24027932
LOCKE LIDDELL & SAPP, LLP
2200 Ross Avenue
Suite 2200
Dallas, TX 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Telecopy)

ATTORNEYS FOR DEFENDANT
COUNTRYWIDE HOME LOANS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Original Answer was served on this the 22nd day of August, 2006 on the following, via certified mail, return receipt requested:

Thomas C. Retzlaff
P. O. Box 92
San Antonio, TX 78291-0092

*C. D.*

NO. 2006-CI-11334

| | | |
|---|---|---|
| THOMAS RETZLAFF, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 37TH JUDICIAL DISTRICT |
| BRENT WILSON, CHOICEPOINT | § | |
| SERVICES, INC., ROBERTH FAITH, | § | |
| STACEY HUNT, JOHN and/or JANE | § | |
| DOE, and GREYSTAR REAL ESTATE | § | |
| PARTNERS, LLC, | § | |
| | § | |
| Defendants. | | BEXAR COUNTY, TEXAS |

**DEFENDANTS BRENT WILSON AND CHOICEPOINT SERVICES, INC.'S
NOTICE OF REMOVAL TO FEDERAL COURT**

TO THE HONORABLE JUDGE OF SAID COURT:

Notice is hereby given that Defendants Brent Wilson and ChoicePoint Services, Inc. have filed in the United States District Court for the Western District of Texas, San Antonio Division, their Notice of Removal of the above-styled cause from the 37th Judicial District Court of Bexar County, Texas to the United States District Court for the Western District of Texas, San Antonio Division.  A true and correct copy of this Notice is attached as **Exhibit 1.**  This Notice will be promptly transmitted to all parties pursuant to 28 U.S.C. § 1446(d). This Court is respectfully requested to proceed no further in this action.

Respectfully submitted,

Robert T. Mowrey
State Bar No. 14607500
C. Don Clayton
State Bar No. 24027932

LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue
Suite 2200
Dallas, TX 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Telecopy)

**ATTORNEYS FOR DEFENDANTS
BRENT WILSON AND CHOICEPOINT
SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Removal to Federal Court was served on this the 25th day of August, 2006 on the following, via certified mail, return receipt requested:

Thomas C. Retzlaff
P. O. Box 92
San Antonio, TX 78291-0092
(210) 317-9800 (Telephone)
(210) 877-6034 (Telecopy)
Attorney for Plaintiff

David Fritsche
921 Proton
San Antonio, Texas 78258
(210) 227-2726 (Telephone)
(210) 227-5500 (Telecopy)
Attorney for Greystar Real Estate Partners, LLC

234102

NO. 2006-CI-11334

| | | |
|---|---|---|
| THOMAS RETZLAFF, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| VS. | § | 37ᵀᴴ JUDICIAL DISTRICT |
| | § | |
| BRENT WILSON, CHOICEPOINT SERVICES, | § | |
| INC., ROBERT FAITH, STACEY HUNT, JOHN | § | |
| and/or JANE DOE, and GREYSTAR REAL | § | |
| ESTATE PARTNERS, L.L.C. | § | |
| *Defendants* | § | BEXAR COUNTY, TEXAS |

## DEFENDANT GREP SOUTH, L.P., a Delaware Limited Partnership's ORIGINAL ANSWER, SPECIAL DENIALS, ORIGINAL COUNTERCLAIMS and TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE § 10.002 MOTIONS FOR SANCTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COMES** GREP SOUTH, L.P., a Delaware Limited Partnership ("Defendant"),

Defendant in the above-entitled and numbered cause, and files this its Original Answer, Special

Denials, Original Counterclaims and TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE § 10.002

Motions for Sanctions and would respectfully show the Court as follows:

### GENERAL DENIAL

1.     Defendant denies each and every, all and singular, the allegations contained in Plaintiff's last

filed petition herein, and demands strict proof thereof by a preponderance of the evidence.

### SPECIAL DENIAL

2.     There is a defect of the party Defendant. TEX. R. CIV. P. 93(4).

### ORIGINAL COUNTERCLAIMS

3.     Now comes Defendant/Counter-Plaintiff and files this its Original Counterclaims against

Plaintiff/Counter-Defendant and would respectfully show the Court as follows:

DEFENDANT GREP SOUTH, L.P., a Delaware Limited Partnership ORIGINAL ANSWER, SPECIAL DENIALS, ORIGINAL COUNTERCLAIMS  and TEX. R. CIV. P. 13 and  TEX. CIV. PRAC. & REM. CODE § 10.002 MOTIONS FOR SANCTIONS

Page 1

### Facts

4.    Plaintiff/Counter-Defendant's pleading against Defendant is groundless and brought in bad faith, groundless and brought for the purposes of harassment, or, groundless and interposed for an improper purpose, such as to cause unnecessary delay or needless increase in the cost of litigation.

### Counterclaim One

5.    Pursuant to TEX. CIV. PRAC. REM. CODE § 9.012(e)(3), Defendant/Counter-Plaintiff is entitled to the amount of reasonable expenses incurred because of the filing of Plaintiff/Counter-Defendant's pleading, including costs, reasonable attorneys' fees, witness fees, fees of experts, and deposition expenses, for which sum Defendant/Counter-Plaintiff hereby sues.

### Counterclaim Two

6.    Pursuant to TEX. CIV. PRAC. & REM. CODE § 10.004, Plaintiff is liable to Defendant/Counter-Plaintiff for sanctions to the greatest extent allowed by law, for which sums Defendant/Counter-Plaintiff hereby sues.

### TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE § 10.002 Motions for Sanctions

7.    Plaintiff's causes of action against Defendant/Counter-Plaintiff are presented for an improper purpose, to wit: the claims are harassing, or, to cause unnecessary delay, or, needless increase in the cost of litigation. Since Plaintiff's causes of action are groundless and brought in bad faith or for the purpose of harassment, the Court, after hearing, should impose a monetary sanction under TEX. R. CIV. P. 215-2b and/or TEX. CIV. PRAC. & REM. CODE § 10.004 upon the attorney who filed the pleading, the represented party, or both.

**WHEREFORE, PREMISES CONSIDERED,** Defendant/Counter-Plaintiff prays that

after final trial hereof, Plaintiff/Counter-Defendant take nothing by his lawsuit and that Defendant/Counter-Plaintiff recover of and from Plaintiff/Counter-Defendant all of its reasonable expenses incurred, including costs, reasonable attorneys' fees, through an appeal to the Supreme Court, witness fees, fees of experts and deposition expenses. Defendant further prays for such other and further relief to which Defendant may show itself justly entitled.

Respectfully submitted,

**LAW OFFICES OF R. DAVID FRITSCHE**
921 Proton Road
San Antonio, Texas 78258-4203
Telephone: (210) 227-2726
Facsimile: (210) 227-5550

By: _____
R. David Fritsche
State Bar Number 07481200
ATTORNEYS FOR DEFENDANT GREYSTAR
MANAGEMENT SERVICES, L.P.

## VERIFICATION

Jill Welborn

STATE OF TEXAS            §

COUNTY OF BEXAR          §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Jill Welborn, Regional Vice President for GREP SOUTH, L.P., a Delaware Limited Partnership, who, being by me duly sworn on oath deposed and said that she is the authorized agent for GREP SOUTH, L.P., a Delaware Limited Partnership, Defendant in the above-entitled and numbered cause; that she has read the above Defendant GREP SOUTH, L.P., a Delaware Limited Partnership Original Answer, Special Denial, Original Counterclaims and TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE § 10.002 Motions for Sanctions and that every statement contained in Paragraph 2 of Defendant GREP SOUTH, L.P., a Delaware Limited Partnership's Original Answer, Special Denial, Original Counterclaims and TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE § 10.002 Motions for Sanctions is within her personal knowledge and is true and correct.

SUBSCRIBED AND SWORN TO BEFORE me on this the 24th day of August, 2006, to certify which witness my hand and official seal.

Notary Public in and for The State of Texas

TONI LYNNE SUMPTER
Notary Public
State of Texas
My Commission Expires
August 8, 2010

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been delivered via certified mail, return receipt requested, to:

Thomas C. Retzlaff
P. O Box 92
San Antonio, Texas 78291-0092

in accordance with the Texas Rules of Civil Procedure on this the 25th day of August, 2006.

R. David Fritsche

DEFENDANT GREP SOUTH, L.P., a Delaware Limited PartnershipORIGINAL ANSWER, SPECIAL DENIALS, ORIGINAL COUNTERCLAIMS and TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE § 10.002 MOTIONS FOR SANCTIONS                                                                                                          Page 4

234102

NO. 2006-CI-11334

| THOMAS RETZLAFF, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| VS. | § | 37TH JUDICIAL DISTRICT |
| | § | |
| BRENT WILSON, CHOICEPOINT SERVICES, | § | |
| INC., ROBERT FAITH, STACEY HUNT, JOHN | § | |
| and/or JANE DOE, and GREYSTAR REAL | § | |
| ESTATE PARTNERS, L.L.C. | § | |
| *Defendants* | § | BEXAR COUNTY, TEXAS |

## DEFENDANT GREP SOUTH, L.P., a Delaware Limited Partnership's ORIGINAL ANSWER, SPECIAL DENIALS, ORIGINAL COUNTERCLAIMS and TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE § 10.002 MOTIONS FOR SANCTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COMES** GREP SOUTH, L.P., a Delaware Limited Partnership ("Defendant"),

Defendant in the above-entitled and numbered cause, and files this its Original Answer, Special

Denials, Original Counterclaims and TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE § 10.002

Motions for Sanctions and would respectfully show the Court as follows:

### GENERAL DENIAL

1.      Defendant denies each and every, all and singular, the allegations contained in Plaintiff's last

filed petition herein, and demands strict proof thereof by a preponderance of the evidence.

### SPECIAL DENIAL

2.      There is a defect of the party Defendant. TEX. R. CIV. P. 93(4).

### ORIGINAL COUNTERCLAIMS

3.      Now comes Defendant/Counter-Plaintiff and files this its Original Counterclaims against

Plaintiff/Counter-Defendant and would respectfully show the Court as follows:

DEFENDANT GREP SOUTH, L.P., a Delaware Limited PartnershipORIGINAL ANSWER, SPECIAL DENIALS, ORIGINAL COUNTERCLAIMS  and TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE § 10.002 MOTIONS FOR SANCTIONS

## Facts

4.     Plaintiff/Counter-Defendant's pleading against Defendant is groundless and brought in bad faith, groundless and brought for the purposes of harassment, or, groundless and interposed for an improper purpose, such as to cause unnecessary delay or needless increase in the cost of litigation.

## Counterclaim One

5.     Pursuant to TEX. CIV. PRAC. REM. CODE § 9.012(e)(3), Defendant/Counter-Plaintiff is entitled to the amount of reasonable expenses incurred because of the filing of Plaintiff/Counter-Defendant's pleading, including costs, reasonable attorneys' fees, witness fees, fees of experts, and deposition expenses, for which sum Defendant/Counter-Plaintiff hereby sues.

## Counterclaim Two

6.     Pursuant to TEX. CIV. PRAC. & REM. CODE § 10.004, Plaintiff is liable to Defendant/Counter-Plaintiff for sanctions to the greatest extent allowed by law, for which sums Defendant/Counter-Plaintiff hereby sues.

## TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE § 10.002 Motions for Sanctions

7.     Plaintiff's causes of action against Defendant/Counter-Plaintiff are presented for an improper purpose, to wit: the claims are harassing, or, to cause unnecessary delay, or, needless increase in the cost of litigation. Since Plaintiff's causes of action are groundless and brought in bad faith or for the purpose of harassment, the Court, after hearing, should impose a monetary sanction under TEX. R. CIV. P. 215-2b and/or TEX. CIV. PRAC. & REM. CODE § 10.004 upon the attorney who filed the pleading, the represented party, or both.

**WHEREFORE, PREMISES CONSIDERED,** Defendant/Counter-Plaintiff prays that

after final trial hereof, Plaintiff/Counter-Defendant take nothing by his lawsuit and that Defendant/Counter-Plaintiff recover of and from Plaintiff/Counter-Defendant all of its reasonable expenses incurred, including costs, reasonable attorneys' fees, through an appeal to the Supreme Court, witness fees, fees of experts and deposition expenses. Defendant further prays for such other and further relief to which Defendant may show itself justly entitled.

Respectfully submitted,

**LAW OFFICES OF R. DAVID FRITSCHE**
921 Proton Road
San Antonio, Texas 78258-4203
Telephone: (210) 227-2726
Facsimile: (210) 227-5550

By: _____
    R. David Fritsche
    State Bar Number 07481200
**ATTORNEYS FOR DEFENDANT GREYSTAR MANAGEMENT SERVICES, L.P.**

DEFENDANT GREP SOUTH, L.P., a Delaware Limited Partnership ORIGINAL ANSWER, SPECIAL DENIALS, ORIGINAL COUNTERCLAIMS and TEX. R. CIV. P. 13 and TEX. CIV. PRAC. & REM. CODE § 10.002 MOTIONS FOR SANCTIONS
                                                                                    Page 3

## VERIFICATION

Jill Welborn

STATE OF TEXAS          §

COUNTY OF BEXAR         §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Jill Welborn, Regional Vice President for GREP SOUTH, L.P., a Delaware Limited Partnership, who, being by me duly sworn on oath deposed and said that she is the authorized agent for GREP SOUTH, L.P., a Delaware Limited Partnership, Defendant in the above-entitled and numbered cause; that she has read the above Defendant GREP SOUTH, L.P., a Delaware Limited Partnership Original Answer, Special Denial, Original Counterclaims and Tex. R. Civ. P. 13 and Tex. Civ. Prac. & Rem. Code § 10.002 Motions for Sanctions and that every statement contained in Paragraph 2 of Defendant GREP SOUTH, L.P., a Delaware Limited Partnership's Original Answer, Special Denial, Original Counterclaims and Tex. R. Civ. P. 13 and Tex. Civ. Prac. & Rem. Code § 10.002 Motions for Sanctions is within her personal knowledge and is true and correct.

SUBSCRIBED AND SWORN TO BEFORE me on this the 24th day of August, 2006, to certify which witness my hand and official seal.

Notary Public in and for The State of Texas

TORI LYNNE SUMPTER
Notary Public
State of Texas
My Commission Expires
August 8, 20__

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been delivered via certified mail, return receipt requested, to:

Thomas C. Retzlaff
P. O Box 92
San Antonio, Texas 78291-0092

in accordance with the Texas Rules of Civil Procedure on this the 25th day of August, 2006.

R. David Fritsche

## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| THOMAS RETZLAFF, | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | § |
| | § |
| BRENT WILSON, CHOICEPOINT | § |
| SERVICES, INC., ROBERT FAITH, | § |
| STACY HUNT, JOHN and/or JANE | § |
| DOE, and GREYSTAR REAL ESTATE | § |
| PARTNERS, LLC, | § |
| | § |
| **Defendants.** | § |

CAUSE NO. _____

## DEFENDANT GREP SOUTH, L.P., A DELAWARE LIMITED PARTNERSHIP'S
## CONSENT TO NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant GREP SOUTH, L.P., a Delaware Limited Partnership, hereby consents to

removal of this action from the 37th Judicial District, Bexar County, Texas to the United States

District Court for the Western District of Texas, San Antonio Division.

Dated: August 25, 2006

Respectfully submitted,

R. David Fritsche
State Bar No. 07481200
Law Offices of R. David Fritsche
921 Proton Road
San Antonio, Texas 78258-4203
Telephone: (210) 227-2726
Facsimile: (210) 227-5550
**ATTORNEYS FOR DEFENDANT**
**GREP SOUTH, L.P., A DELAWARE**
**LIMITED PARTNERSHIP**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via certified mail, return receipt requested, to:

Thomas C. Retzlaff
P. O. Box 92
San Antonio, TX 78291-0092
(210) 317-9800 (Telephone)
(214) 877-6034 (Telecopy)

Robert T. Mowrey
C. Don Clayton
LOCKE LIDDELL & SAPP, LLP
2200 Ross Avenue, Suite 2200
Dallas, TX 75201
(214) 740-8000 (Telephone)
(214) 740-8800 (Telecopy)

on this the 25th day of August, 2006.

R. David Fritsche